A. C. Gibson, Plff. in Err., *v.* Nancy A. Sutton and Samuel Sutton, her Husband, to the Use of Said Nancy A. Sutton.

A married woman may receive as a gift her husband's property from one who has purchased it at a bona fide sheriff's sale on execution against him, and may hold it against the husband's creditors.

(Decided November 1, 1886.)

Argued October 18, 1885, before GORDON, TRUNKEY, STERRETT, and GREEN, JJ. October Term, 1886, No. 130, W. D. Error to the Common Pleas of Butler County to review a judgment on a verdict for plaintiff in a feigned issue to try the title to personal property. Affirmed.

February 11, 1886, the court awarded this issue, under a sheriff's interpleader in which Nancy A. Sutton and her husband, Samuel Sutton, in the right of the wife, were plaintiffs, and A. C. Gibson was defendant, to try the title to certain chattels consisting of horses, cattle, sheep, hogs, wagons, and other farm implements, levied upon by the sheriff of Butler county, as the property of Samuel Sutton, by virtue of a fi. fa. issued on a judgment against Samuel Sutton in favor of A. C. Gibson.

The facts are fully set out in the opinion of the supreme court.

Plaintiff, *inter alia,* presented the following points:

"1. If the jury find from evidence that is full, clear, and satisfactory, that the plaintiff, Nancy A. Sutton, acquired title to the personal property in dispute in this case, either by purchase or gift, from John Sutton, who had purchased and paid for the same when sold at sheriff's sale as the property of Samuel Sutton; or that it is in part the product and increase of said property, and that it was not purchased on credit, or with funds furnished in

NOTE.—A like determination is found in McLaughlin v. McLaughlin, 91 Pa. 462, and in Winch v. James, 68 Pa. 297. It is for the jury to say whether a gift was intended (Hess v. Brown, 111 Pa. 124, 1 Cent. Rep. 917, 2 Atl. 416) ; or whether the arrangement was made to defraud other creditors. (Evans v. Kilgore, 147 Pa. 19, 23 Atl. 201).

whole or in part by Samuel Sutton, directly or indirectly; and that the transaction was made in good faith with no intention to defraud anyone, and that no one was actually defrauded thereby, then the verdict should be for the plaintiff."

*Ans.* "We say to you, gentlemen, that if you find in the spirit in which this is set out, these facts, then we affirm this point. But we call your attention particularly to the way in which the proposition is stated."      First assignment of error.

"2. That from and after the 21st of May, 1883, the plaintiff, Nancy A. Sutton, having fully complied with the requirements of the law in that behalf, has been entitled to her separate earnings, as if she were a single woman, and was competent to carry on business for herself, and her earnings in that business are her own and not subject to any legal claim of her husband or his creditors."    Affirmed.    Second assignment of error.

"4. If the jury find that the title to the property is outstanding in John Sutton, the verdict should be for the plaintiff."

*Ans.* "We affirm this with this explanation: If you find a verdict for the plaintiff in this case coming to this point, if you find this fact, that the title passed from Samuel Sutton and never revested in him, and that the title is outstanding in some other person, but the possession of that property was in Nancy A. Sutton, then we say to you that she having lawful possession of the property, though the title is in some other person than herself, this execution creditor would not be entitled to that property on his execution. But we want you, gentlemen, to look at this feature of the case with great care. She would not have any right to set up a defense here to the execution creditors selling somebody else's property to pay her husband's debts.    As far as she is concerned, if that property is in her care and keeping, then we think that this execution creditor would not be justifiable in levying upon and taking it as against her. We want you to examine very cautiously as to whether or not the title was in her."    Third assignment of error.

Defendant, *inter alia,* presented the following points:

"5. Upon all the facts the verdict must be for the defendant."

*Ans.* "We refuse this, for we think there is sufficient in the case as it stands before you to submit the question to you to find the facts.    If we concurred in the view that this point covers, we would take it from the jury and relieve you from any further trouble; but we think there is sufficient here for you to pass

upon and we submit the evidence as it is before you for you to find the facts. Hence we refuse that point." Fourth assignment of error.

"6. The court is respectfully requested to instruct the jury that under the proofs of the plaintiff in this case she was in law the agent of her husband; and having purchased the property in question upon credit, the property belongs to her husband as it respects his creditors, and is liable for his debts."

*Ans.* "This is very closely allied to other points that have been presented, and much of the explanation from them is applicable to this. We affirmed this with the qualifications that we have already referred to. If there be nothing in evidence to take this out of the claim of rule of law as has been in this state except as modified by the act of 1872, then the last proposition there would bear upon this case very forcibly. But this is proof to go before you, for you to take into account in making up the whole case. We submit to you, gentlemen, the evidence adduced in the case, with instructions that you may thereby find what the facts are; and with you now rests the responsibility of determining the facts, and when you have so determined, you will make your verdict, either for the plaintiff or the defendant, as in your judgment you find." Fifth assignment of error.

*R. P. Scott,* for plaintiff in error.—Nancy A. Sutton, the wife, having claimed the property levied upon by the sheriff as against A. C. Gibson, the execution creditor of her husband, Samuel Sutton, the burden was upon her to show affirmatively, by clear, full, and satisfactory proof, that she paid for said property with her own separate funds. Keeney v. Good, 21 Pa. 355; Gamber v. Gamber, 18 Pa. 366; Leinbach v. Templin, 105 Pa. 526.

The credit upon which her purchase was based still exists. She had no separate estate upon the credit of which she could or did contract. Her credit was her husband's credit, and the property so purchased by her belongs to her husband as it respects his creditors, and is liable for his debts. Bucher v. Ream, 68 Pa. 426; Lochman v. Brobst, 102 Pa. 481; Leinbach v. Templin, 105 Pa. 526; Pier v. Siegel, 107 Pa. 502, and cases therein cited.

A married woman must have a separate estate to protect her purchase upon credit. The estate must be available and pro-

portionate to the credit it supports. Her purchase must in fact be made not upon her credit, but upon the credit of her separate estate, upon her ability to pay out of her own separate funds. Gault v. Saffin, 44 Pa. 307; Pier v. Siegel, 107 Pa. 502, and cases therein cited.

Goods purchased by a married woman on her own credit are not her separate property. Her credit is nothing in the eyes of the law, and when she does contract the law esteems her the agent of her husband. Heugh v. Jones, 32 Pa. 432; Hallowell v. Horter, 35 Pa. 375.

And what she may acquire as the result of her skill and industry or on her merely personal credit accrues to her husband, and as to his creditors is to be taken as his, and is liable for his debts. Raybold v. Raybold, 20 Pa. 311; Bucher v. Ream, 68 Pa. 421; Pier v. Siegel, 107 Pa. 502.

*A. T. Black,* for defendants in error.—It was established before the act of 1872 that a married woman who had a separate estate was not precluded from buying upon credit, because "the broad distinction has been preserved between a wife's credit founded upon her own separate estate and its product, and a credit founded on nothing but her mere promise, or upon earnings that belong to her husband." Brown v. Pendleton, 60 Pa. 419.

It has never been held by this court that a married woman, without a separate estate, but who was entitled to her own separate earnings under act of 1872, could not purchase property upon credit, pay for it out of such earnings and hold it against her husband's creditors. Bovard v. Kettering, 101 Pa. 181.

The defendant in error had at least as good a basis for a credit of her own as a married woman with a separate estate had prior to 1872, and therefore the legal principles applied to cases of a married woman with a separate estate prior to 1872 are applicable to her case. A married woman may carry on and manage. a farm with the assistance of her husband and his children, and hold the products, and articles purchased with them, against her husband's creditors. Rush v. Vought, 55 Pa. 437, 93 Am. Dec. 769.

And this is not changed by the fact that the husband acts as agent for his wife, or even if the business be conducted in his name. Troxell v. Stockberger, 105 Pa. 405.

The transaction between John Williamson, John Sutton, and Nancy A. Sutton was closed as far as possible, on May 16, 1883.

Where, as in this case, the evidence clearly shows that the husband had neither property, money, nor credit, and that the property levied upon was the result of the wife's own energy, labor, and economy, to refuse to recognize and protect her ownership of it upon slight and technical grounds, is to expunge the statute which confers upon her the right to retain her earnings from whatever source derived, against her husband or his creditors. Rush v. Vought, 55 Pa. 437, 93 Am. Dec. 769; Wieman v. Anderson, 42 Pa. 311.

Whether the transfer of this property is a gift or whether it is a purchase by the married woman on her own credit without any separate estate to support it, is a question for the jury. Hess v. Brown, 111 Pa. 124, 1 Cent. Rep. 917, 2 Atl. 416.

OPINION BY MR. JUSTICE GREEN:

The controversy in this case was over the title to certain personal property claimed by the plaintiff, a married woman, against a creditor of her husband who had seized it in execution as the husband's property.

The property in question, or some of it, had formerly belonged to the husband, and had been sold at sheriff's sale and purchased by his brother at a fair price, and paid for, and the money distributed among the husband's creditors. The real estate of the husband, a farm of about 100 acres, had also been sold by the sheriff and purchased by the brother.

After the sale the brother leased the farm to the husband upon a contract for the payment of wages to the husband. The personal property in question, being a stock of horses, cattle, sheep, hogs, and farming implements, remained on the premises and were used by the consent of the owner, the brother, in conducting the farming operations. The brother had borrowed $3,700 upon a mortgage of his own land and this farm, in order to raise the money with which to buy the real and personal estate of the husband, and the money was so applied. All this occurred in 1879. The husband and wife occupied the farm for several years, and the mortgage given by the brother for $3,700 was reduced by payments to $3,000, by the year 1883. In that year the brother agreed with the wife to sell her the land for $3,-

000, in order that the mortgage might be paid off. So much is clear under the evidence. The money was furnished by one Williamson in the interest of the wife; and the form of the transaction was that the brother made a deed in fee simple to Williamson for the farm for the consideration of $3,-000, which was paid by Williamson. The latter immediately agreed with the wife in writing to sell her the land for $3,000, payable in four years with ·interest, and that in the meantime she should occupy the land and take the profits. The title to the land is still held by Williamson, and the wife and her husband have been in possession of the land ever since.

Now the question is as to the title of the personal property. The plaintiff claims it was given to her by the undoubted owner, her husband's brother. The defendant claims it was purchased by the plaintiff on credit, and as she had no separate estate it became the property of the husband and subject to his debts. There is no dispute about the land. If the property was given to the wife, she could hold it beyond question as her own and free of liability for her husband's debts. This question was substantially submitted to the jury by the answer·of the court to the plaintiff's first point; and as the jury has found for the plaintiff we must assume the wife's title to have been derived by gift from the former owner, the husband's brother. It is true the first clause of the point affirms a good title in the wife whether acquired by gift or purchase, but the last clause excludes a purchase on credit or with the funds furnished partly or wholly by the husband; and, thus stated, the point was correctly answered, and the title by gift or by purchase other than with the husband's money was all that remained in the point. There was no evidence of purchase with money furnished by anybody unless the $3,000 was in part the consideration of the personal estate. But there is no testimony to prove this, and, on the contrary, the testimony is very clear, and without contradiction, that the whole of the $3,000 was required to pay for the land.

The court told the jury emphatically and repeatedly that the wife could not buy on credit, and that if this property was the result of her own earnings it belonged to her husband. While the evidence was not very distinct as to the transfer of the personal property, it was substantially to the effect that it was given to the plaintiff by her husband's brother. Thus Mr. Walker, the attorney who acted for those parties, says: "His wife has

the farm back to-day as I understand it, but she owes Mr. Williamson a mortgage, and the personal property John turned over and gave to her." The testimony of the brother is somewhat muddy, but he says he was the owner of the personal property up to the time of the Williamson transaction; that he intended it to stay on the farm; that he neither sold nor gave it to his brother; and that when the mortgage given by him was paid he claimed no further title to the land or stock.

Williamson testified that the $3,000 furnished by him was to pay for the land only. Mrs. Sutton testifies that her understanding of the transaction was that the personal property was to be hers, and added: "John told me at that time that he would give me"——, when she was interrupted by an objection and the court excluded the rest of the declaration, though for what reason we cannot understand. She was a competent witness and could prove a verbal gift directly from the owner either by her own or any other testimony. The defendant gave no testimony, and we think there was sufficient evidence to justify the jury in inferring a gift by John Sutton to his sister-in-law of the personal property in question.

In the case of Hess v. Brown, 111 Pa. 124, 1 Cent. Rep. 917, 2 Atl. 416, we held that a married woman may receive as a gift her husband's property from one purchasing it at a bona fide sheriff's sale, subject to a reservation by the donor, and use it, trade with it, purchase other goods with the proceeds, and hold all against the husband's creditors.

Whether the transfer of this property is a gift, or whether it is a purchase by the married woman on her own credit without any separate estate to support it, is a question for the jury. That ruling covers every aspect of the present case and we find no error in the record.

Judgment affirmed.