## CYRUS WESTON *vs.* JOHN HIGHT, 2d. *Admr.*

It is essential to a good gift *causa mortis*, that the donor should make it in his last illness, and in contemplation and expectation of death; and if he recover, the gift becomes void.

Where the gift was made while the donee was in expectation of immediate death from *consumption*, and he afterwards so far recovered as to attend to his ordinary business for eight months, but finally died from the same disease; such gift cannot be supported as a *donatio causa mortis.*

The indorsement of a promissory note by the donee, cannot be the subject of a gift *causa mortis*, so as to render his estate liable on his indorsement.

EXCEPTIONS from the Court of Common Pleas, SMITH J. presiding.

Assumpsit against the defendant as administrator of the estate of *Hanson Hight*, deceased. The testimony on the trial is given in the bill of exceptions, wherein it appears, that the presiding Judge, by consent of the parties, ordered a nonsuit. Exceptions to the order were filed by the plaintiff. The facts are sufficiently given in the opinion of this Court. The argument having been made before the appointment of *Shepley J.*, he took no part in the decision.

*Tenney*, for the plaintiff, in his argument, contended :—

1. The note being indorsed and delivered, became the property of the daughter, so that if the maker paid it, she would have the proceeds. If it was a mere gift, it was effectual. 2 *Blk. Com.* 441 ; 2 *Kent's Com.* 353, 355. As a gift *inter vivos*, the transfer was perfect, and irrevocable. 2 *Kent*, 354, 356. And it is the same, if a *donatio causa mortis.* 2 *Kent*, 359, 362 ; 3 *Binney*, 366.

2. The indorsement and assignment of this note make the indorser and his estate liable, as much as if founded on a full pecuniary consideration, provided all the steps have been taken, which are necessary to hold ordinary indorsers under the same circumstances. 10 *Mass. R.* 247 ; 5 *Pick.* 506 ; 3 *Pick* 323 ; 2 *Stark. Ev.* 280; 6 *Pick.* 427; *Par. F. in Fryeburg* v. *Ripley*, 6 *Greenl.* 446, overruling *Boutelle* v. *Cowdin*, 9 *Mass. R.* 254. But here was a good consideration. The note was delivered to the daughter as an advancement out of his estate. The plaintiff

offered to prove by her and her husband, that they did give a release, when the note was delivered. This evidence was improperly rejected. 3 *Stark. Ev.* 1045, 1051, 996, 1021 ; 4 *Mass. R.* 684.

3. On the maturity of the note the defendant was requested to let the daughter have the land, or pay the note. He refused to let her have the land, and by withholding it, the estate became accountable.

4. There was reasonable demand and notice to charge the indorser. 3 *Kent,* 65 ; *Bayley on Bills,* 149, *and notes ;* 6 *Mass. R.* 524 ; 13 *Mass. R.* 559 ; 7 *Mass. R.* 486. But if not, the intestate waived demand and notice. This may be proved by parol. *Fuller* v. *McDonald,* 8 *Greenl.* 213 ; 4 *Pick.* 525 ; 3 *Stark. Ev.* 1054. The defendant also, as administrator, waived demand and notice, as he had the power to do. *Bayley on Bills,* 192 ; 2 *Conn. R.* 478 ; 2 *T. R.* 713 ; *Buller's N. P.* 276 ; 1 *T. R.* 410 ; 2 *Phill. Ev.* 44 ; 5 *Mass. R.* 170 ; 2 *Greenl.* 207 ; 3 *Mass. R.* 225.

5. The suit was properly brought by the present plaintiff. The first indorser is liable to every subsequent *bona fide* holder. 3 *Kent,* 60 ; 1 *Esp. R.* 182 ; *Bay.* 158 ; 2 *Burrow,* 1216 ; *Bayley on Bills,* 70 ; *Stark. Ev.* 249 ; 6 *Mass. R.* 386 ; 1 *Dane's Abr.* 387.

*Wells,* for the defendant.

1. The action cannot be maintained against the indorser, because the demand and notice were not seasonably made. The demand should have been made on the last of *April,* as the note fell due on that day. *New-England Bank* v. *Lewis,* 2 *Pick.* 125 ; *Greely* v. *Thurston,* 4 *Greenl.* 479 ; *Woodbridge* v. *Brigham,* 13 *Mass. R.* 556 ; *Henry* v. *Jones,* 8 *Mass. R.* 453 ; *Farnum* v. *Fowle,* 12 *Mass. R.* 89.

2. The present plaintiff took the note in *July,* 1835, after it had been dishonored, and therefore took it subject to any defence which could be made, had the suit been brought by the payee. 13 *East,* 479 ; *Mead* v. *Small,* 2 *Greenl.* 207.

3. There was no consideration passing from the daughter to the father, which is necessary. *Tenney* v. *Prince,* 7 *Pick.* 243. If signed by the father and given to the daughter, it is *nudum pactum.*

*Hill* v. *Buckminster*, 5 *Pick.* 391 ; 18 *Johns. R.* 145. It was a gift *inter vivos,* taking immediate effect. 2 *Kent,* 444.

4. This was a special indorsement, limited in its character, and not transferrable by the daughter. The plaintiff cannot maintain any action upon it. *Taylor* v. *Binney,* 7 *Mass. R.* 479.

5. It was not a *donatio causa mortis,* because that is a conditional gift in the last illness. 2 *Kent,* 444. But if it were so, it would at the utmost only pass the note, but not a right of action against himself. 2 *Kent,* 445.

The opinion of the Court was drawn up by

EMERY J. — As the note was lost after the commencement of the action, parol proof was rightfully received of its contents and of the indorsement. The note was dated *Feb.* 15, 1832, given by *Joshua Gould* to *Hanson Hight,* or his order, for $270, payable in two years from *April* then next, with interest annually. And a memorandum was made upon the back of the note substantially as follows. *March,* 1832. " For a valuable consideration, I hereby assign the within note to *Abigail Weston* my daughter, to be collected for her own use and benefit ; and I hereby assign to her the same security which I hold for the payment of said note." The memorandum was signed by said *Hanson Hight.* And on *July,* 1835, before the commencement of this action, said *Abigail* and her husband, *George B. Weston,* indorsed the note to the plaintiff without recourse to them. The consideration of the note was a bond, which the intestate gave to said *Gould,* to convey certain real estate, owned by the intestate, on *Gould's* paying this and other notes. It was proved, that *Gould* was not supposed to have attachable property, which was visible, in his hands for several years last past. An action was commenced on the note by *George B. Weston* and wife, in their names, against the defendant as administrator, and they failed in proof before the jury, and became nonsuit, after which they transferred the note to the plaintiff. *G. B. Weston* testified, that on the first day of *May,* 1834, he presented the note to said *Gould* and demanded payment, which was refused, and on that day he notified the defendant that the note had been presented to *Gould* and payment refused, and demanded of the defendant payment of the note, or a conveyance

of the real estate, and defendant told him he should not have the land. In the *June* following, the defendant told him he should not have the land, but would pay the note. The testimony of said *Abigail Weston* was, that the intestate indorsed the note to her, and that the substance of the indorsement was, that she should have the same indemnity that he had. He said the note was good, and that the land was holden for it, and if *Gould* did not pay the note, of which he seemed suspicious, that she might have the land for which the note was given, if she chose, or the heirs would pay her the amount of said note, and keep the land.

This is not a case of *donatio causa mortis.* It was not made in the last sickness of the intestate. The note was given to *Abigail Weston* by the intestate, in *March,* 1832, when he was sick and expected to live but a little while; but he got better and attended to his business until *December,* 1832, when he was taken sick again, so as to be confined to his house, and soon after died. His disorder was consumption. It is truly said to be a most flattering, deceptive and fatal disease. It is known to continue for years, but with intervals of such portions of seeming health that it has little effect upon the mental powers, and, as in this instance, not to incapacitate the sufferer from attending to his business. The very ground upon which donations of this description are supported failed. There was such a subsequent recovery as vacated the gift.

In *Holliday v. Atkinson & al. Exrs.* 5 *Barnw. & Cress.* 501, (in 1826) *Abbott C. J.* says, a promissory note is not good, as a *donatio causa mortis;* and in *Parish* v. *Stone,* 14 *Pick.* 198, it was held, that the delivery of a donor's own note, payable to the donee, cannot constitute a *donatio mortis causa* to the donee. Nor would the equalizing the distribution of one's estate after his decease be a sufficient consideration for a contract by him to pay money. The attempt here is to charge the administrator by reason of the indorsement of the note. We are not aware that this would in general be greater ground for claim against him, than if the note of the testator had been directly given to his daughter. We are farther satisfied, that if the testimony of *George B. Weston* was credited, the demand and notice were seasonably made. There was, however, contradictory evidence, and the case is presented to us, under some peculiar circumstances. We perceive in a certain

extent of the evidence, an almost certain foundation for the claim of the plaintiff, and in a little farther advance, an unquestionable destruction of it.    Looking yet farther we apprehend a possibility, that injustice may be done to the plaintiff from the want of a full exhibition of all the facts which may truly exist.    An arrangement was made by consent to bring the case before us ; and as our desire is to do full justice to the parties ; perceiving that there may have been such a release of the right and interest which *Weston* and his wife had in *Hight's*, the intestate, estate, by way of advancement, as might constitute a good consideration for the indorsement of the note to hold the administrator responsible ; we deem it important to set aside the nonsuit and grant a new trial, so that the real truth may be made manifest.