Statement of Facts.

## J. D. SOURWINE ET UX. v. C. O. CLAYPOOL, EXR.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 14, 1890—Decided November 3, 1890.

[To be reported.]

(a) A father, by way of a gift to his married daughter, contributed $400 toward the purchase of a tract of land, made by her husband, intending that the money should go into the land for her benefit. Afterwards, learning that the daughter's husband had taken a deed for the land in his own name, the father procured from him a judgment note for the $400.

(b) The husband having sold the land by articles of agreement, the father, who was holding the note in trust for his daughter, entered it, levied upon, and bought at sheriff's sale the legal title to the land. Thereupon, by ejectment against the equitable vendee, he collected from the latter the unpaid purchase money, amounting less expenses to $600:

1. The gift of $400, made to the daughter, having been executed by the payment of it for her use, without reserving any dominion over it, a valid trust for her benefit arose when the father took the judgment therefor; wherefore, she was the beneficial owner of the legal title acquired by the sheriff's sale and of the purchase money collected by the ejectment.

2. In an action by the daughter against her father's executor to recover the $600 collected by the testator, her claim did not rest upon a parol gift of land, but upon a gift of the $400; and the father's deliberate admissions to third persons, if sufficiently clear, full and precise, and related to existing facts and not to a mere intention, are competent to establish the gift.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 121 October Term 1890, Sup. Ct.; court below, No. 191 June Term 1887, C. P.

On April 20, 1887, John D. Sourwine and Ellen, his wife, in right of and to the use of said wife, brought assumpsit against C. O. Claypool, executor of Daniel Shaeffer, deceased, to recover the sum of $600, alleged to have been received by said Daniel Shaeffer in his lifetime, for the use of the said Ellen Sourwine. Issue.

At the second trial on March 18, 1890, the following facts were shown upon the part of the plaintiffs:

### Statement of Facts.

The beneficial plaintiff, Ellen Sourwine, was a daughter of Daniel Shaeffer, deceased. In 1865 she was married to John D. Sourwine ; and, not long thereafter, Daniel Shaeffer contributed $400 toward the price of a tract of land in Indiana county, purchased by her husband. No note or obligation for the repayment of this money was then taken, and there was no agreement for its repayment. The only evidence as to the nature of the transaction consisted of declarations of Daniel Shaeffer not made in the presence of either of the plaintiffs, to the effect, in substance, that he made the contribution as a gift to his daughter, intending that it should go into the land for her benefit. One or two of these declarations were made before the payment of the money, and stated a purpose to make such a contribution ; the others were subsequent to its payment and were statements of what Mr. Shaeffer had done. The most important of the declarations, shown in the testimony, are quoted in the opinion of the Supreme Court, infra.

After Sourwine and wife had gone into the occupancy of the land above mentioned, Daniel Shaeffer took from Sourwine a judgment note for the $400, payable to himself. He subsequently told another daughter that John had got the deed for the land made in his own name and he was not pleased about it, and had made John give him a note for Ellen's share, $400 ; that he took the note because he was afraid that John, having the deed in his name, would squander the money.

In 1873 or 1874, John Sourwine entered into an article of agreement for the sale of the land to Jonas Hileman, for $1,000, and received $100 on account of the purchase money. Learning of this, Shaeffer sent his son to Indiana county with the $400 judgment note, had it entered, had the land levied upon and sold at sheriff's sale thereunder, as the property of Sourwine, and became its purchaser. After some litigation by ejectment with Hileman, he finally collected from the latter $900, the unpaid residue of the purchase money upon the article of agreement. Of that sum there remained in his hands, after paying his bid at the sheriff's sale and the expenses of the litigation, $600. A number of declarations, made about the time of this transaction and subsequently, by Daniel Shaeffer to his son John Shaeffer, his daughters, Lucinda

Shearer and Sarah Claypool, his daughter-in-law, Sarah Shaeffer, and other persons, part of which are quoted in the opinion of the Supreme Court, infra, were shown in the testimony. Their general purport was that his purpose in selling the land was to get out of it the $400 which he had put into it for Ellen, so that he might prevent John Sourwine from getting it and squandering it and save it for Ellen; that the $600 remaining in his hands, after "squaring" up everything, was Ellen's money, and he was holding it for her, and that, as soon as they would look up a place that pleased them, he was going to invest it in land for her, so that John Sourwine could not get it, to go through with it. To one witness he said that he would pay it to her when he was ready. To another he said that if he did not give it to her himself, she would get it after he was gone. Some of these declarations were testified to have been made within a short time of Sheaffer's death in 1886.

The defendant presented testimony tending to show that, in the spring of 1883, Mrs. Sourwine was at her father's house, and that they had a quarrel about this money, she asserting that he owed her $600, and he saying that she and John had squandered $600 and he did not owe them anything, and offering to give her $50 if she would go away and leave him alone, to which she replied that she did not want any of his thieving, stolen property. This quarrel, one of the defendant's witnesses testified, lasted a week.

At the close of the testimony the court, MEHARD, P. J., 35th district, specially presiding, charged the jury in part as follows:

[In this case, the plaintiff's claim to recover is, that there was a gift of four hundred dollars by Daniel Shaeffer to Mrs. Sourwine.][4] You must find from the evidence in this case that there was not only the purpose in the mind of Daniel Shaeffer to give this money to his daughter, but that he actually gave it to her; otherwise your verdict must be in favor of the defendant. [It is not essential, however, that the money should have been given directly to Mrs. Sourwine. It is sufficient if Daniel Shaeffer made an absolute and unconditional payment of this money to some one else for her benefit.][5] If the evi-

Charge of Court below.

dence in this case satisfies you that Daniel Shaeffer gave the money, either to John D. Sourwine or the one from whom the land was bought, not as the absolute property of Mrs. Sourwine, but he reserving at the time a control over it, but intending that he would use that control for the use and benefit of Mrs. Sourwine, that was not a sufficient giving, and your verdict would have to be in favor of the defendant. . . . .

Now, if the only evidence in this case were that Daniel Shaeffer had invested four hundred dollars in this land for the benefit of Mrs. Sourwine, and at the time he invested it he took a note in his own name for four hundred dollars, the plaintiff could not recover, in our opinion. If the note of four hundred dollars was made at the time the money was invested, and that four hundred dollar note was taken in the name of Daniel Shaeffer, we would say clearly that it evidenced the intention of Daniel Shaeffer to retain the control of the money, and that it could not be called an executed gift; but, if his intention was to make an absolute investment there, and a clear, unconditional gift to Mrs. Sourwine, and he made that without taking any note or evidence of indebtedness at that time, but relinquishing all control of it,—and even though he afterwards assumed control, the subsequent assumption of the control would not destroy the validity of the gift; but you are to take into consideration the fact of the note being given, as well as the testimony indicative of what the real transaction was, at the time the four hundred dollars was invested, as indicative of all that was done and what was intended to be done by Daniel Shaeffer. . . . .

Now, if Mrs. Sourwine had a valid legal claim against her father, you can reasonably ask why she did not bring suit. If there is no apparent reason for her not bringing suit, and a great length of time has elapsed, that is a fact weighing against the probability of her having a valid legal claim against her father. You are of course to consider that it was father and daughter, and whatever explanation that would be to your minds for the delay in bringing suit, or her failure to do so in the lifetime of her father. On the other hand, you are to consider the fact, if you believe it to be a fact, that she and her father had a violent dispute, ending in an open rupture, in which she said she would not have any of his thieving, stolen

money, and to inquire whether one who had a valid legal claim, and who would use such language as that towards her father, would upon the ground of affection and filial regard hesitate to bring suit against her father, or whether that was a sudden exclamation of passion, and not indicative of the settled feelings of the plaintiff towards her father.

You are to have in mind all these things; and, gentlemen of the jury, you are not, in any of your deliberations, to forget for a moment that the pivotal point in this case, is whether or not Daniel Shaeffer made a completed and unconditional gift of this money to his daughter, or whether he only intended an investment of which he would retain control and which he would use for his daughter's benefit. If it was the former, and you find that after that was made, and in consideration of that Daniel Shaeffer received into his hands money from Mr. Hileman, and that the amount of money he realized after the payment of expenses was $600, then you should render a verdict in favor of the plaintiff for $600 together with interest; but, if you do not so find, then your verdict should be in favor of the defendant. . . . .

The defendant requests the court to charge :

1. That, under all the evidence in the case, the plaintiff is not entitled to recover.

Answer: This request is refused. We leave it with you, gentlemen, to say whether or not the plaintiff is entitled to recover, in view of the evidence in the case and the law as it has been laid down to you.[1]

2. That something more specific than loose declarations is necessary to furnish that solid and satisfactory ground on which the court is to decide the rights of property; there being no evidence in this case of anything except admissions, the plaintiff cannot recover.

Answer: This is a question which you have heard the counsel on both sides discuss with great earnestness and ability. It is a question upon which we have our own doubts, viz., whether it is sufficient for the plaintiff to rest upon the admissions of Daniel Shaeffer, not only as to the fact of his intention, but as to the fact that he actually did make a gift of this money to his daughter, without accompanying proof of what took place at the time the money was invested; but we do not in-

Opinion of Court below.

struct you in this case that the plaintiff cannot recover for that reason. We leave it to you to say, under all the evidence, whether there was such an intention to give, and whether there was also such an unconditional gift made absolutely by Daniel Shaeffer; but we reserve for subsequent consideration the question whether the declarations or admissions of Daniel Shaeffer are sufficient to sustain a verdict in the event of your finding in favor of the plaintiff.[2]

3. There is no evidence in this case of a delivery of the claim sued for, and the plaintiff is not entitled to recover.

Answer: This request is refused, the plaintiffs relying upon the admissions or declarations of Daniel Shaeffer.[3]

The jury found a verdict for the plaintiff for $563.21. Rules for judgment for the defendant non obstante veredicto, and for a new trial were discharged, MEHARD, P. J., filing an opinion in part as follows:

The theory upon which plaintiff seeks to recover is as follows: That John D. Sourwine, plaintiff's husband, purchased, by executory contract, a piece of land in Indiana county, Pa., and at that time Daniel Shaeffer paid on the land four hundred dollars, for the benefit and as a gift to his daughter, the plaintiff; that thereafter Daniel Shaeffer, learning that John D. Sourwine had taken a deed for the land in his own name, procured a note from Sourwine to secure the four hundred dollars for Sourwine's wife, and that Shaeffer took that note in his own name; that thereafter Shaeffer, having obtained judgment on the note, sold the land and purchased in his own name; that Shaeffer re-sold the land to one Jonas Hileman and realized from said sale, after the payment of all costs and expenses, at least six hundred dollars. To recover this sum the suit was brought. . . . .

The jury found the facts involved in this theory in favor of the plaintiff. It is contended by the learned counsel for defendant that they do not embrace a delivery of the alleged gift to the donee, Mrs. Sourwine. It is to be borne in mind that the gift relied upon by plaintiff is not of the six hundred dollars paid by Hileman to Shaeffer for the land, but of the four hundred dollars paid by Shaeffer on the land bought by Sourwine for the benefit of his daughter Mrs. Sourwine. The jury

have found that Shaeffer paid that over as an absolute gift to his daughter, intending it as such, and not reserving any interest in or control over it.   It is not necessary that the money should have been paid directly to the donee; it was a sufficient delivery if paid to a third person on her behalf: Kilby v. Godwin, 2 Del. Ch. 61; 3 Pomeroy's Eq., § 1149, n. 3.   Inasmuch as Mrs. Sourwine was a feme-covert at the time, and the gift was to her advantage, the law accepted it for her, so that no proof of acceptance was necessary:  Dehevillon v. Evans, 39 Cal. 120;  Jackson v. Bodle, 20 Johns. 184;  Darland v. Taylor, 52 Ia. 503; 1 Washburn, R. P., 468, *315; 3 Pomeroy's Eq., 89, § 1149, n. 1.   If those were the facts in the transaction, it was a valid, executed gift of the four hundred dollars, and was, of course, not revocable: Greenfield's Est., 14 Pa. 489.   Thereafter, Mrs. Sourwine alone was entitled to the benefits arising from this money.   If it was the consideration of a note given by Sourwine to Shaeffer, for the purpose of securing the money to Mrs. Sourwine, or even without that purpose, the equitable right to the security would still be in Mrs. Sourwine.

But the plaintiff's case rests solely on declarations of Daniel Shaeffer made to third persons, so far as the evidence of the gift of four hundred dollars is concerned.   It is earnestly contended on behalf of defendant, that such declarations, made to third persons, are not legally sufficient to sustain a verdict against a decedent's estate.   A discussion of the authorities will not be undertaken here.   The examination given to the cases decided by our Supreme Court leads to the conclusion that they may be divided into three classes, viz.: 1.  Where the plaintiff seeks to establish a parol gift or sale of land.   In such case, declarations of the decedent made to third persons are not sufficient in law to sustain the claim.   The parties must be brought face to face when the terms of the bargain are stated: Harris v. Richey, 56 Pa. 395;  Burgess v. Burgess, 109 Pa. 312.   2.  Where the circumstances under which the declarations are made show that no weight should be given them ; or, where they indicate only an intention, rather than a deliberate admission of fact.   In such case, they are likewise insufficient to sustain a verdict: Pollock v. Ray, 85 Pa. 428.   3.  Where plaintiff's claim does not rest on a parol gift or sale of land; in which case, if the declarations relate to existing conditions,

Arguments.

and are sufficiently full, clear and precise, they may be sufficient to warrant a verdict in favor of the plaintiff: Miller's App., 100 Pa. 568. . . . .

—Judgment having been entered, the defendant took this appeal, specifying that the court erred:

1-3. In the answers to the defendant's points.[1 to 3]

4, 5. In the parts of the charge embraced in [ ][4 5]

6. In not entering judgment on the reserved question for the defendant.

*Mr. W. D. Patton,* for the appellant:

The claim in this case rests entirely upon alleged admissions of Daniel Shaeffer, deceased, to third persons, not made in the presence of Mrs. Sourwine, nor to persons in any way representing her. Such loose declarations are insufficient to establish a claim like this against a dead man's estate: Zimmerman v. Zimmerman, 129 Pa. 237; Keyser's App., 124 Pa. 82, per Penrose, J., sustained by Supreme Court; Sandford v. Decamp, 8 W. 544; Wharton on Ev., § 1077; Burgess v. Burgess, 109 Pa. 316; Miller's App., 100 Pa. 572. The plaintiff cannot recover on the ground that the $600 was received by the decedent for his daughter, without proof of a consideration: Kennedy v. Ware, 1 Pa. 445; Linsenbigler v. Gourley, 56 Pa. 166; Trough's Est., 75 Pa. 115. Upon the point that there was a gift to the daughter, the case is fatally defective, as there is no evidence of delivery. She herself appears never to have known of the so-called executed gift, as when brought face to face with her father she makes no such claim. If there had been a delivery to her, certainly she would have known about it. To perfect a gift there must be an actual delivery, a parting not only with the possession, but with the dominion of the property: Bond v. Bunting, 78 Pa. 210; Zimmerman v. Streeper, 75 Pa. 147.

*Mr. M. F. Leason* (with him *Mr. J. H. McCain*), for the appellees:

The conversations of Daniel Shaeffer were not loose declarations, but a recounting to his children of what he had actually done. They were evidence in support of the plaintiff's claim: Miller's App., 100 Pa. 572. They were neither loose, uncertain, nor ambiguous; and they were corroborated by the cir-

cumstances.  As the court below clearly shows, in a case of this kind the evidence was sufficient to submit to the jury.

OPINION, MR. JUSTICE CLARK:

The question in this case is raised upon the defendant's first point submitted, that, under all the evidence, the plaintiff was not entitled to recover and the verdict should be for the defendant.

The learned judge instructed the jury in the plainest manner that to constitute a gift of the four hundred dollars by Daniel Shaeffer to his daughter, Mrs. Ellen Sourwine, it was essential that the donor should not only have the intention to give, but that he should actually and in fact have given the money to her; that, if it was only his purpose to give the money to his daughter at some future time, or if he reserved the control over it, for her benefit in the future, the transaction was not a gift. He said to the jury that it was not necessary, in any literal sense, that the money should have been placed in her hand; it was sufficient if it was put in the hand of, or was paid over to some other person for her benefit; that a gift to be valid and irrevocable cannot be executory, but must be executed, and therefore, to establish a gift of the four hundred dollars, there must have been not only an intention to give, but an absolute gift without reservation or condition.  Under this instruction, the jury found for the plaintiff, and the verdict is conclusive upon the facts, if there was evidence to sustain it.

It appears that about the year 1865, John D. Sourwine married Ellen Shaeffer, daughter of Daniel Shaeffer, the decedent. Shortly afterwards, he purchased a tract of land in Indiana county, Shaeffer contributing four hundred dollars to the payment of the purchase money.  In the year 1873, Sourwine, by articles, sold the land to Jonas Hileman for one thousand dollars, receiving one hundred dollars of the purchase money in hand.  Shaeffer thereupon required Sourwine to give him a judgment note for the four hundred dollars which he had contributed to the purchase money.  This note he afterwards entered, and upon execution sold Sourwine's interest at sheriff's sale.  Having purchased Sourwine's legal estate at the sheriff's sale, he brought ejectment against Hileman, and recovered a verdict conditioned upon the payment of the nine

Opinion of the Court.

hundred dollars purchase money, which condition Hileman complied with, and Shaeffer received the nine hundred dollars with interest. These facts are wholly undisputed. The plaintiff's contention is, however, that the four hundred dollars was an executed gift to her; that the judgment note, taken in her father's name, was in her right and in her interest, and for her benefit and protection; and that, therefore, the purchase money recovered in the ejectment from Hileman, after payment of the costs and expenses, was her money. Upon this theory of the case, this suit is brought against the executor of her father's estate, for money had and received by her father in his lifetime, for her use.

The gift, if any, was of money, not of land; and, although by means of the judgment, the legal title to the Hileman land was acquired by Shaeffer, the title followed the ownership of the money, and the purchase money paid by Hileman belonged to the beneficial owner of the title. The case turns, therefore, upon the question whether or not the original contribution of the four hundred dollars by Shaeffer to the purchase of the land by Sourwine was an executed gift of the money to Sourwine's wife, which fact was found for the plaintiff. The amount remaining of the nine hundred dollars paid by Hileman, after payment of costs and expenses, is six hundred dollars, and this is the amount of the plaintiff's claim.

At the time the money was put in the land, no note or other obligation was taken for its return or repayment, nor is there the slightest proof that it was to be repaid or returned. The testimony throughout is that Shaeffer put the four hundred dollars in the land for Ellen.

Mrs. Lucinda Shearer, a daughter of the decedent, testifies that about the time Sourwine purchased the land, Daniel Shaeffer told her " he was going to put four hundred dollars in for Ellen;" he afterwards told her "he had put the four hundred dollars in for Ellen," but John had got the deed made in his own name, and he was not pleased about it, and " he had made John give a note for Ellen's share for four hundred dollars;" he said "he wanted Ellen to get her money." After Sourwine had sold the land, he said that when the costs were all paid whatever was left Ellen was to have; that he was going to invest the six hundred dollars in land as soon as they would look out a place to please them.

Opinion of the Court.

John Shaeffer, the decedent's son, testifies that, under his father's direction, he brought the judgment note given by Sourwine to Indiana county and entered it; that his father said "he wanted to enter it up, and get the money out of the land, to save it for Mrs. Sourwine; he was afraid the way it was, John Sourwine would get it and squander it;" that "he had put four hundred dollars in that land there for her, and he wanted to get it out for her and save it." "He told me," says the witness, "that he had this money; that he drew it out of this land; that he was saving it for Ellen Sourwine. It came up in reference to lending money. There was a man by the name of Andy Snyder that lived in Washington township, Indiana county, wanted to borrow some money, and he got me to find out from my father if he could not lend him some money, and I spoke to him about it, and he said he had no money then collected in, only this money that he had of Mrs. Sourwine's, and he did not want to put that out. It was principally gold, and he did not care about putting that out."

Sarah Shaeffer, a daughter-in-law of the decedent, testifies that after the money had been paid by Hileman, and everything was "squared off," the old man said "he had six hundred dollars in his hands that was Ellen's money;" that it had come out of the land; "he said," says the witness, "that he had now in his hands, after everything was 'squared up,' he had six hundred dollars for Ellen."

There is much other evidence in the cause to the same effect, and evidence also of the old man's refusal to pay the money to Mrs. Sourwine, until she would purchase land, and of some angry words between the father and daughter because of his refusal. It is unnecessary that we should give it all; we have given enough to illustrate the character of the proofs upon which the plaintiff relies. The principal witnesses are the decedent's son and daughter and his daughter-in-law, who would appear to testify against their own interest. This is not a case where the plaintiff seeks to establish a parol gift or sale of land, and the deliberate admissions of the decedent, if they are sufficiently clear, full, and precise, and relate to existing facts, and not to a mere intention, are competent to establish the gift.

Whilst there are some slight inconsistencies in the evidence,

as a whole it tends to establish the plaintiff's theory of the case. It would have been clear error for the court to have withdrawn the case from the jury.

The judgment is affirmed.

————— ◆ —————

138  137
148  357

