CASTLE v. PERSONS:

(Circuit Court of Appeals, Eighth Circuit. September 15, 1902.)

No. 1,729.

1. GIFT CAUSA MORTIS—DELIVERY.

A verbal direction by a creditor to his debtor to pay the debt, which is not evidenced by any note or other writing, to another, where the debtor at the time accepts the order and promises the donee to make payment to him, constitutes a good delivery to validate a gift of the chose in action causa mortis. Per Carland, District Judge.

2. SAME—REVOCATION—PARTIAL RECOVERY OF DONOR.

A donor 84 years old, when seriously ill and in expectation of death, made a gift to his wife causa mortis. The evidence showed that he partially recovered, and lived for nearly a year thereafter, being able to walk during a part of the time for a distance of half a mile, but did not disclose the nature of his illness. Held, that it was error to charge as matter of law upon such evidence that the donor's partial recovery operated as a revocation of the gift. Per Carland, District Judge.

3. PLEADING—VARIANCE—DEFENSE NOT PLEADED.

The due process of law, without which parties may not be deprived of their property, requires that notice be given of the issue to be determined before it is tried. A defendant may not deny in his answer the plaintiff's averments of a good cause of action, and then defeat him by a confession of the truth of those averments and an avoidance of their effect by the proof of new matter, no notice of which was given by the pleadings or by the course of the trial until plaintiff had introduced substantially all his evidence. Per Sanborn, Circuit Judge.

4. DIRECTION OF VERDICT—DEPARTURE FROM ISSUES.

In an action to recover on a chose in action which plaintiff alleged had been verbally assigned to her by her husband, which assignment had been accepted by defendant, who promised to pay the debt to her, the court is not warranted in directing a verdict and entering judgment for defendant on the ground that the assignment to plaintiff was intended as a gift causa mortis, which became ineffectual by reason of the subsequent recovery of the donor, where defendant did not plead such defense, having himself received a gift from the donor at the same time and under the same circumstances, which he still retained, but denied his indebtedness and the assignment, such issues being the only ones litigated by the parties. Per Sanborn, Circuit Judge.

5. NOVATION—VERBAL ASSIGNMENT OF CHOSE IN ACTION — ASSENT OF DEBTOR.

A verbal assignment of a chose in action, not evidenced by any note or other writing, assented to by the debtor, who promises to pay the debt to the assignee, constitutes a complete novation, and effectually substitutes the assignee as the creditor. Per Sanborn, Circuit Judge.

Thayer, Circuit Judge, dissenting.

---

¶ 2. See Gifts, vol. 24, Cent. Dig. § 116.

In Error to the Circuit Court of the United States for the District of Minnesota.

J. N. Castle, for plaintiff in error.

Rome G. Brown, Charles S. Albert, Herman Winterer, and Edward Winterer, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. This action was originally commenced in the district court of Washington county, Minn., and subsequently removed by the defendant in error to the circuit court of the United States for the district of Minnesota, on the ground of diversity of citizenship. Maria Persons was the original plaintiff, but, she having died pendente lite, the action is now prosecuted by her executor. The object of the action was to recover from defendant in error the sum of $5,000 and interest. The complainant alleged for a cause of action that prior to the 23d day of January, 1897, the defendant in error became and was indebted to one Thomas Persons in the sum of $5,000; that on said date defendant in error admitted said indebtedness, and, at the request of said Thomas Persons, promised to pay the same to Maria Persons, with interest. The answer of defendant in error denies any indebtedness to Thomas Persons, or that said Thomas ever directed or requested him to pay said indebtedness, if any existed, to Maria Persons, or that defendant in error ever promised or agreed to pay said indebtedness to Maria Persons. At the close of the testimony for plaintiff in error, counsel for defendant in error made the following motion:

"I move to direct a verdict on the ground that there is not sufficient evidence to enable the jury to find the issue in favor of the plaintiff in this action, and particularly that there is not sufficient evidence to show an accounting by which any sum was agreed upon between the father and defendant, and no sufficient evidence to show that there was an assignment of that claim by the father to the mother, and it appears so far as any evidence appears, as a question of law, that if anything was due that money is still due to the estate of Thomas Persons, and not to the mother."

The trial court granted the motion upon two grounds, and those grounds can hardly be said to have been embraced in the above motion. They were that the evidence showed that plaintiff in error's title to the chose in action was derived through an attempted donatio causa mortis, which failed (1) because there was no delivery of the chose in action by Thomas Persons to Maria Persons; and (2) because there was a recovery of Thomas Persons from the sickness which caused him (Thomas Persons) to make the gift, which by operation of law revoked the same. The case was not tried on any such theory, and not till the court ruled had this theory been mentioned in the pleadings or by counsel. Counsel for plaintiff in error excepted to the ruling of the court, and such ruling is the only error assigned here. Conceding, for the purpose of this writ of error, that the theory on which the trial court ruled was the correct one, let us examine plaintiff's testimony, and ascertain if there were not issues that ought to have gone to the

jury. There was abundant testimony from which the jury might have found the following facts:

On January 23, 1897, at Alma, state of Washington, Thomas Persons, father of defendant in error, was a man 84 years of age. He was a very sick man. He expected to die; others expected him to die. He desired to dispose of his property in order to save administration. In contemplation of death he gave to defendant in error certain property in the state of Washington, and to another son certain property in the state of Minnesota. On this same date he was asked by defendant in error this same question: "What are you going to do with what money I owe you?" Thomas Persons answered: "That is mother's. I want mother to have that." Defendant in error, turning to his mother, Maria Persons, who was present, said: "Mother, that is all right, but I have not got the money with me, but I will pay you when I get back." That defendant in error repeatedly acknowledged to Maria Persons and others subsequent to this time and prior to the death of Thomas Persons that the amount owing by him to the latter was $5,000. That defendant in error subsequently, many times prior to the death of Thomas Persons, promised to pay this sum to Maria Persons, and did pay her $100 thereof. Thomas Persons died on December 27, 1897.

The following is all the testimony bearing upon the question of revocation of this transaction by operation of law, resulting from the recovery of Thomas Persons from the illness from which he apprehended death, and under which apprehension he made, or attempted to make, this disposition of the chose in action to Maria Persons. He never did anything himself to revoke the gift.

Simon E. Persons, examined in chief by counsel for plaintiff in error:

"Q. Well, what eventually happened? Did he recover or recover temporarily? A. He did partly. He partially recovered, and we took him back to Minnesota."

Cross-examination:

"Q. Your father, up to the time he died, from the time he first came back from Alma, was in feeble health? A. He was quite feeble at first, but he got so he could walk half a mile and further,—sometimes three-quarters of a mile. Q. But during the last few weeks of his life he was very feeble, was he not? A. The last two months he was continually in bed, or six weeks. Q. Was your father able to transact business on his own account and keep his accounts and do his business for himself, or did somebody have to assist him? A. He was perfectly able to do it himself; at least, I thought so. He always did. Q. Did he do correspondence of his own? A. Mother, I think, did the writing for him. Q. Up to the time of his death? A. I think so."

Maria Persons, examined in chief by counsel for plaintiff in error, testified as follows:

"Q. After that did your husband die or did he recover? A. He recovered partially. Q. Where did you go then? A. We came, or rather was brought back here, to Afton; neither one of us could walk."

Out of 67 pages of printed testimony, the foregoing is all that counsel on either side put into the case upon a question which turned the plaintiff out of court. The court, at the close of the case, elicited the following testimony from the witness Marion E. Persons:

"The Court: After your father made this disposition of his property did he get well, so he was able to travel? A. Yes, sir. Do you mean at Alma or at any time? The Court: At any time. Ans. Yes, sir. Q. Where did he drive? A. He traveled around about the yard and up and down the roads at my place at Afton. The Court: How far was he able to go? A. Half a mile or a mile. He did walk that, and might have walked more. He was out and walked every morning before breakfast about half a mile. The Court: Was he as well as he had been for several years before this sickness in Washington that you spoke of, at the time that he disposed of this property? A. He was until the last two months. The Court: Have possession of his mind and faculties, so he could think as well about his affairs as he had been accustomed to before that sickness in Washington? A. Yes, sir."

On the theory that the evidence showed a donatio causa mortis, these questions by the court were dangerous in the extreme to plaintiff in error's case, and the most dangerous could not have been asked by counsel for defendant in error in the form in which they were put. The witness simply affirmed the testimony of the court. On this evidence was the court justified in deciding as a matter of law that there was no delivery of the chose in action? The evidence in regard to the order or request which Thomas Persons made to the defendant in error, to pay the indebtedness owing by defendant in error to Thomas Persons to Maria Persons, when considered with the evidence in regard to the acceptance of said order and the promise to pay said indebtedness to Maria Persons by defendant in error, was sufficient, to say the least, to go to the jury upon the question of delivery, under proper instructions.

We understand that a mere request on a bailee, depository, or debtor to pay money to the donee is not a sufficient delivery of a chose in action so as to validate a gift causa mortis. Yet where the request or order is accepted by the person upon whom it is made during the lifetime of the donor this is a good delivery. A check upon a bank is in itself, though delivered to the donee, no delivery, but if accepted by the bank during the lifetime of the donor the delivery is good. Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500, and cases cited.

We see no difference between a verbal order or request and a written order or request, there being no law requiring either to be in writing. Neither need the acceptance be in writing. If the defendant in error owed Thomas Persons, and Thomas Persons requested him to pay the debt to Maria Persons, and he, upon such request, promised to pay it to Maria Persons, thereby extinguishing his debt to Thomas Persons, Maria Persons could sue and recover upon the promise, and, if this could be done, then all control over the chose in action would be in Maria Persons. She had complete power to reduce it to possession. In other words, all the delivery of which the chose in action was capable had been made.

We also think the court erred in deciding as a matter of law that if the evidence showed a donatio causa mortis it was revoked by operation of law by the recovery of Thomas Persons from the illness which caused him to apprehend death, and under which apprehension he made the gift causa mortis. In the first place, the record may be searched in vain for any evidence as to the cause of the illness of Thomas Persons. Had he been injured in an accident? Had he consumption? Had he a contagious disease? Had he a cancer, Bright's

disease, or one or more of many other diseases which lead as straight to death as the projectile from the gun? If we do not know the cause of the sickness of Thomas Persons on January 23, 1897, how can we say as a matter of law that he recovered from it before he died, especially in view of the evidence in the record as to his partial recovery? He had the possession of his faculties. So he did at Alma when he disposed of his property and was expected to die every hour. He was brought from the state of Washington to Minnesota, but he could not walk. If we are permitted to draw any inference from the evidence as to the cause of his illness, we might infer that the weight of 84 years was so heavy upon him as to cause him to believe that his life might end any day. Who can say as a matter of law that Thomas Persons did not each day from January 23, 1897, to December 27, 1897, when he died, apprehend death from the same cause that made him sick at Alma, state of Washington? Grymes v. Hone, 49 N. Y. 21, 10 Am. Rep. 313, is a case where Federal Vanderburgh made what was held to be a donatio causa mortis. It was made August 19, 1867, and he died January 23, 1868. He was from 78 to 80 years of age and in failing health. Peckham, J., in delivering the opinion of the court, used the following language:

"True, he did not, and of course could not, know when death would occur, when he executed the assignment, but he was in apprehension of it. His age and his 'failing' told him death was near, but when it might occur he had no clear conviction. An ailment at such an age is extremely admonitory. From these facts can this court say, as a matter of law, that this testator was not so seriously ill when he executed this assignment as to be apprehensive of death; that he was not legally acting in view of death; that he was not so ill as to be permitted to make this sort of gift? True, the donor died five months thereafter; but we are referred to no case or principle that limits the time within which the donor must die to make such a gift valid. The only rule is that he must not recover from that illness."

We have no doubt that the issue of gift or no gift causa mortis, and the issue as to whether, if there was a gift causa mortis, it had been revoked by the recovery of Thomas Persons, ought to have gone to the jury under proper instructions. The question whether there has been a gift in a particular case is for the consideration of the jury, and the evidence on the subject should therefore be submitted to it. Flanigan v. Waters, 57 Kan. 18, 45 Pac. 56; Jones v. Jones (Ky.) 43 S. W. 412; Nye v. Chace, 139 Mass. 379, 31 N. E. 736; Peirce v. Burroughs, 58 N. H. 302; Betts v. Francis, 30 N. J. Law, 152; Trow v. Shannon, 78 N. Y. 446; Hess v. Brown, 111 Pa. 124, 2 Atl. 416; Osthaus v. McAndrew (Pa.) 8 Atl. 437; Horn v. Buck, Id. 609; Swab v. Miller (Pa.) 9 Atl. 667; Jacques v. Fourthman, 137 Pa. 428, 20 Atl. 802; Sourwine v. Claypool, 138 Pa. 126, 20 Atl. 840; In re Osterhaut's Estate, 148 Pa. 223, 23 Atl. 1069; McKane's Ex'rs v. Bonner, 1 Bailey, 113; McLure v. Lancaster (S. C.) 58 Am. Rep. 259. Whether or not there has been a delivery is a question for the jury. Thomas v. Degraffenreid, 17 Ala. 602; Hunt v. Hunt, 119 Mass. 474; Kelly v. Maness, 123 N. C. 236, 31 S. E. 490. A gift causa mortis, like a gift inter vivos, is a question of fact for the jury. Dunn v. Bank, 109 Mo. 90, 18 S. W. 1139; Scollard v. Brooks, 170 Mass. 445, 49 N. E. 741.

The judgment of the court below should be reversed, and a new trial granted; and it is so ordered.

THAYER, Circuit Judge (dissenting). I am satisfied that this case was correctly decided by the circuit court, and I accordingly dissent from the order made by my associates reversing the judgment of the lower court.

The amended complaint, on which the case was tried, after reciting various facts showing that Phineas P. Persons, the defendant below, who is commonly called Page Persons, was, on January 23, 1897, indebted to his father, Thomas Persons, since deceased, in a sum exceeding $5,000, thereupon alleged "that on the 23d day of January, 1897, for a valuable consideration, the said Thomas Persons duly transferred, sold, and assigned $5,000, constituting part of the said indebtedness, to this plaintiff (Maria Persons), who now owns and holds the same, and then and there directed the defendant to pay the same to the plaintiff, which the defendant then and there agreed to do, and on the last-mentioned day specially agreed by and with this plaintiff to pay said sum of five thousand dollars to this plaintiff on demand, with five per cent. interest per annum." It is clear, therefore, that the original plaintiff, Maria Persons, the mother of the defendant Page Persons, who is now represented by her executor, Luke B. Castle, sued as the assignee, for a valuable consideration, of a part of an indebtedness claimed to be due from Page Persons to his father, Thomas Persons, which indebtedness was not evidenced or represented by any bond, bill, note, or other instrument in writing, but was a chose in action pure and simple. The defendant below denied the existence of any such indebtedness, and also denied the assignment thereof to his mother, and on these issues the case was tried.

The evidence which was offered by the plaintiff to sustain her complaint was to the following effect: That in the month of January, 1897, the father, Thomas Persons, was residing at Alma, Wash.; that he was taken very sick about the 18th of January, 1897, and that another son, Simon E. Persons, who resided near Hudson, Wis., was summoned by telegram to his father's bedside; that he arrived at a railroad station near where his father was living on the evening of January 22, 1897, and was met there by his brother, Edgar Persons, and was told that his father was very sick and perhaps would not live until the two brothers reached the house; that he did live during the night; that on the succeeding morning, January 23, 1897, a notary was summoned to the house, and on his arrival was told by Thomas Persons that he wished to make some disposition of his property to save the expenses of administration; that he gave instructions to the notary to make out a deed conveying certain property situated in St. Paul, Minn., to his son Simon E. Persons; that he gave directions to make over certain notes and mortgages to his son Page Persons; that he was thereupon asked by his son Page, "What are you going to do with what money I owe you?" and that he replied, "That is mother's; I want mother to have that;" and that the defendant, Page Persons, thereupon turned to his mother, who was present, and said, "That's all right, but I haven't got the money with me, but will pay you when I get back,"—meaning that he would pay it when the family returned to Minnesota, where they expected to go. The witness from whom the foregoing testimony was elicited, Simon E. Persons, one of the brothers, testified that when this occurred Thomas Persons, the father,

was a very sick man, and "didn't expect to live but a very few hours"; that these transfers of property to his sons, Simon E. and Page Persons, were made "because of what [his] father supposed to be then his immediately approaching death"; that in point of fact he recovered from his illness, and returned to Minnesota with his wife, Maria, and after his return lived with his son Simon for nearly a year, or until December 27, 1897, when he died; that after his return to Minnesota, and while he was living with his son Simon, Thomas Persons recovered his health to such an extent that he was able to walk at times as much as a mile, and until the last two months before his death was as well as he had been for several years before he was taken sick at Alma, in the month of January, 1897. The testimony showed that while Maria Persons, the mother, was living in the family of her son Simon, and in March, 1898, she made a will by which she gave all that she possessed to her son Simon, save small legacies amounting to about $100, which she gave to her other sons, Edgar, Curtis, and Page Persons. It also appeared on the trial that, about three weeks before the death of Thomas Persons, Page Persons visited him at his home in Wisconsin, on which occasion he handed to his mother $100, which sum she said she wanted at the time to pay doctor's bills and some other little expenses.

It is suggested in the opinion of the majority that the evidence showing that the gift by Thomas Persons to his wife, Maria, was made in expectation of his immediately approaching death, was elicited somewhat irregularly by the court, at the close of the case. But this suggestion is due, I think, to an oversight, since the fact in question was clearly developed by counsel for the defendant below on the cross-examination of Simon Persons, the principal witness for the plaintiff, who testified, on cross-examination in the manner above stated, that the gift to Maria Persons was made because his father supposed himself to be in extremis.

The foregoing testimony, which was elicited principally from Simon E. Persons, the sole beneficiary under his mother's will, comprehends substantially all the testimony which was produced at the trial for the purpose of proving an assignment for value to Maria Persons of a part of the indebtedness due from Page Persons to his father, which was alleged in the complaint. It is manifest, I think, that it has no tendency to prove such an assignment as was alleged, but, at most, only tends to show a gift causa mortis or a gift inter vivos. And admitting, for the purposes of this case, that a recovery under the complaint might have been allowed if the evidence had shown a completed gift of either kind, yet, as I view the case, no such gift was proven or evidence offered from which the existence of a gift could have been found. To perfect a gift inter vivos or causa mortis, it is absolutely essential that the property or thing given should be delivered to the donee in the lifetime of the donor. Where the property given is bulky, a constructive delivery of the possession thereof may suffice; and where the thing given is a chose in action, and represented by a note, bond, or bill made by a third party, all the authorities agree that a delivery of the note, bond, or bill, unindorsed by the donor, will suffice. Hill v. Stevenson, 63 Me. 364, 18 Am. Rep. 231; Grover v. Grover, 24

Pick. 261, 35 Am. Dec. 319; Corle v. Monkhouse, 50 N. J. Eq. 537, 25 Atl. 157; Licey v. Licey, 7 Pa. 251, 47 Am. Dec. 513; Hackett v. Moxley, 65 Vt. 71, 25 Atl. 898. But it is equally well settled that when a chose in action is not thus represented by a note, bond, bill, or other instrument in writing, which can be delivered, but is merely a claim against a third party, which must be established by parol, a written assignment of the demand, by the donor to the donee, is essential to complete the delivery, whether the gift be one inter vivos or causa mortis. 2 Kent, Comm. (11th Ed.) 567; Hooper v. Goodwin, 1 Swanst. 485; Picot v. Sanderson, 12 N. C. 309. See, also, Sanborn v. Goodhue, 28 N. H. 48, 56, 59 Am. Dec. 398; Bond v. Bunting, 78 Pa. 210.

The evidence in this case discloses beyond peradventure that no written assignment of the chose was made or attempted; hence there was no such delivery as vested the donee, Maria Persons, with the title to the chose. Furthermore, it is evident, I think, that the alleged gift to Maria Persons was made in view of the approaching death of the donor, which event was supposed to be only a few hours distant, and as the donor recovered and lived for nearly a year, and in the meantime enjoyed as good health as he had for some years previously, the gift, treating it as one causa mortis, was revoked by such recovery, even if there had been a sufficient delivery. It is well settled that a gift causa mortis passes to the donee only a defeasible title, which becomes absolute only on the death of the testator, and is usually regarded as revoked if the testator recovers from the particular illness which occasioned the gift. Staniland v. Willott, 3 Macn. & G. 664; Weston v. Hight, 17 Me. 287, 35 Am. Dec. 250; Smith v. Downey, 38 N. C. 268; Martin v. Smith, 25 W. Va. 579; Roberts v. Draper, 18 Ill. App. 167.

Viewing the case from another standpoint, I also conclude that it would be wise to leave the judgment below undisturbed. The case originates in a bitter family quarrel over the property of a deceased parent. Simon E. Persons, who is the principal witness in the case, in view of his mother's will, which was made while she was a member of his family, and while the other sons of Thomas Persons were not present, claims whatever may have been due from Page Persons to his father, at the date of the latter's death, to the exclusion of the other sons. If anything was in fact due to the father's estate from Page Persons, it can be recovered readily by an administrator of the father, duly appointed, and if so recovered it will be apportioned among the sons as the law directs. For the reasons above stated, I am satisfied that the alleged gift to Maria Persons never took effect, and that the lower court was right in so holding.

SANBORN, Circuit Judge. I concur in the judgment of reversal for these reasons:

1. In my opinion no question of donatio mortis causa was presented in this case, and no judgment against the plaintiff ought to be sustained on the ground that the novation which Maria Persons pleaded was void because it was made in contemplation of the death of her husband, Thomas Persons, for the reason that no such defense was

pleaded and no such issue was presented for trial when the case came on for hearing, or was ever fairly tried. The averment of the complaint was that Thomas Persons assigned his claim for $5,000 against Phineas P. Persons to Maria Persons, that he directed Phineas to pay this debt to Maria, and that Phineas agreed to do so. The answer was a flat denial of these averments, and nothing more. The defense, which was interposed by the court near the close of the plaintiff's evidence and which was sustained at the trial, was a confession and avoidance which had not been pleaded, and of which the plaintiff had received no notice until after the issues made by the pleadings had been practically tried. This defense was an admission that Thomas did direct the defendant to pay the $5,000 to Maria, and that the defendant did agree to do so, coupled with an averment, not found in the pleadings, that this contract was void because it was made in contemplation of the immediate death of Thomas Persons, who lived for some months thereafter. This defense was inconsistent with the denial in the answer, was not made by the defendant in the action, and it formed no substantial basis for a judgment.

That due process of law without which parties may not be deprived of their property gives to them an opportunity to be heard respecting the justice of the judgment sought. It gives notice of the issue to be determined before it is tried. One may not bring suit upon one cause of action and recover upon another, nor may he go to trial upon one defense and sustain a judgment in his favor upon another and inconsistent defense. He may not deny in his answer the plaintiff's averments of a good cause of action, and then defeat him by a confession of the truth of those averments, and an avoidance of their effect by the proof of new matter no notice of which was given by the pleadings or by the course of the trial until the plaintiff had introduced substantially all his evidence. Proofs without averments and averments without proofs are equally unavailing. Gentry v. U. S., 41 C. C. A. 185, 101 Fed. 51; Burton v. Platter, 10 U. S. App. 657, 663, 4 C. C. A. 95, 99, 53 Fed. 901, 905; Taussig's Ex'rs v. Glenn, 4 U. S. App. 524, 541, 2 C. C. A. 314, 318, 51 Fed. 409, 413; Merrill v. Rokes, 12 U. S. App. 183, 188, 4 C. C. A. 433, 435, 54 Fed. 450, 452; Live Stock Co. v. Blackburn, 30 U. S. App. 571, 579, 17 C. C. A. 532, 536, 70 Fed. 949, 954; Wood v. Collins, 23 U. S. App. 224, 230, 8 C. C. A. 522, 525, 60 Fed. 139, 142.

2. The reason why the defendant did not plead nor at the trial insist upon the defense that the novation which the plaintiff alleged was void because it was a donatio mortis causa is apparent upon the face of the record. And if the defendant did not choose to make this defense he had a right to waive it, and no duty was imposed upon the court to compel him to avail himself of it. At the same time that Thomas Persons directed the defendant, and he agreed, to pay to Maria Persons the $5,000 which he owed to Thomas, the latter assigned and conveyed to him notes, mortgages, and land of the value of several thousand dollars. If the assignment and novation alleged by the plaintiff were void because they constituted a donatio mortis causa, all the assignments and conveyances made by Thomas to the defendant were also void for the same reason, and until he returns to the estate

of his father the property he received through these assignments and conveyances, or the value of it, he may well hesitate to aver, and the courts to hold, that any of these transactions were void for that reason. It will be time enough to consider whether or not this assignment and novation are void because they constituted a gift in contemplation of the immediate death of Thomas Persons when the defendant has returned to the estate of his father what he received from him on the day that this transaction took place, and has· clearly pleaded the invalidity of this assignment and novation because they were gifts in contemplation of immediate death.

3. There was ample evidence to sustain the cause of action which the plaintiff pleaded and the defendant denied. There was testimony that the defendant was indebted to Thomas Persons in the sum of $5,000, and that this indebtedness was not evidenced by any bond, bill, or writing. There was evidence that on the day in question Thomas Persons assigned and conveyed a large amount of property to the defendant, that he directed the defendant to pay this $5,000 to Maria Persons, and that the defendant agreed to do so. This testimony, if true, constituted a valid assignment of this chose in action and a complete novation,—an effectual substitution of Maria Persons for Thomas Persons as the creditor of the defendant. It released the defendant from his obligation to pay this debt to Thomas Persons, and bound him to pay it to Maria Persons, and the release of his indebtedness to Thomas was a valid and sufficient consideration for his agreement to pay it to Maria. The contract between these parties was complete and perfect in itself. It contained no condition that this assignment, this novation, this substitution of one creditor for the other, should be in any way affected by the death or the continued life of Thomas Persons, and there was nothing in his subsequent partial recovery to release the defendant from his agreement to pay this $5,000 to his mother, especially as long as he retained the property which he obtained from his father on that day, his release from his obligation to pay the $5,000 to his father, and failed to place this money in the hands of the administrator of the estate of the latter to be distributed among his heirs. The transaction related in this evidence was a valid assignment of this claim of $5,000 and a complete and effectual novation. A chose in action not evidenced by writing may be assigned without writing, and if the debtor is aware of the assignment and promises to pay the assignee the latter may maintain an action at law to recover the debt. Rollison v. Hope, 18 Tex. 446, 452.

If a creditor orally directs his debtor to pay his debt to a third party, and the debtor verbally agrees with the third party to do so, the latter is substituted for the first party as his creditor, the first party is estopped from collecting the debt, the debtor is released from paying to him, and is legally bound to pay it to the third party. A complete novation and assignment have been effected. The third party stands in the shoes of the first party as the creditor, and the chose in action has been lawfully assigned to him. Heaton v. Angier, 7 N. H. 397, 28 Am. Dec. 353; Tatlock v. Harris, 3 Term R. 174; Wilson v. Coupland, 5 Barn. & Ald. 228; 1 Pars. Cont. (7th Ed.) 244; 1 Poth. Obl. (3d Am. Ed.) 434.