## UNITED STATES *v.* FRISBIE and others.[1]

*(Circuit Court, E. D. Louisiana.  May 24, 1886.)*

1. CRIMINAL LAW—AMOUNT NAMED IN INDICTMENT.

Where an amount is named in an indictment, it is not necessary for the jury to find that the whole of it was covered by the wrong that was perpetrated. It is enough to find that any of it was.

2. CONSPIRACY—DEFRAUDING UNITED STATES.

A conspiracy is a breathing together.  It means that, on the part of two or more persons, there was a common purpose, supported by a concerted action, to defraud; that each had the intent to do it; that it was common to each of them; and that each understood the others as having that purpose.

3. SAME—LAST SICKNESS.

The last sickness means the sickness that results in death.  It may be more or less extended; according to the circumstances of the disease.  In an acute disease, where a man was well until he was confined to his bed, and then died, it would count only from the time he was prostrated; but if it was a lingering case, admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to the aggregate weakness, the last illness would commence from the time this consumption, in a pronounced way, set in.

Indictment for Conspiring to Defraud the Government, and presenting a false pension claim.

*Charles Parlange,* U. S. Atty., for the United States.

*L. O'Donnell,* for H. N. Frisbie.

*W. R. Whitaker,* for Herman Von Werthern.

*John D. Rouse* and *F. B. Earhart,* for W. H. Hire.

BILLINGS, J., *(charging jury.)*  This is an indictment that is made up of three counts.  The first and second may be considered as one, because they differ only, the first charging that these three defendants conspired to defraud the government of the United States out of 3,400 and odd dollars, and the second that they conspired to defraud the government out of $1,900; the fact being that the bills that were presented amounted to $3,437, but that only $1,900 was due from the government to the pensioner at the time of his death; so that only $1,900 could have been received by them.  But out of abundance of caution the government has drawn the indictment in a double aspect.  The evidence, however, that would support the one would support the other, because, where an amount is named in an indictment, it is not necessary to find that the whole of it was covered by the wrong that was perpetrated.  It is enough to find that any of it was.  Therefore you may consider the first two counts as one, and whoever is innocent of one is innocent of the other; and whoever is guilty of one is guilty of the other.

These two counts, then, considered as one, prefer the charge of conspiring on the part of three men to defraud the government of the

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

United States. A conspiracy, as I remarked before, is a breathing together. It means that on the part of these three persons there was a common purpose, supported by a concerted action, to defraud the government; that each had the intent to do it; that it was common to the three men; and that each understood the others as having that purpose.

Now, the pension money I have explained to you. For some purpose congress has seen fit not to leave the pension that is due a man, and unpaid, at the time of his death, to descend to his heirs. They do not inherit it; nor can the pensioner bestow it by his will. It goes to the widow if she survives him; and if she is dead, and he leaves a minor child under 16, then the child takes it. But if he leaves no widow or minor child under 16 * * *. For while natural children may inherit from their mother, they cannot under any system of government inherit from their father. The law does not countenance that relation in life; it frowns upon it, and punishes, as the Mosaic law did, the children, but not until the third or fourth generation. But it punishes the innocent offspring for the offense of its parents. But, since all offspring are in their turn parents, it works out good. At any rate, an illegitimate child cannot inherit, and, if there is no widow and no minor child under 16, then the money due, but not paid to the pensioner, lapses, so to speak, and goes back to the government, with the single reservation that those who have, in the language of the statute, disbursed for the expenses of the last sickness and the expenses of the funeral of the pensioner, may present their accounts and be paid to the extent of the amount of the pension due.

Now, the evidence shows that, when Capt. Springer died, $1,900 was due him of his pension, and that the account presented by Von Werthern, through his attorney, Col. Frisbie, was for an amount exceeding $3,400. At all events, it exceeded $1,900. That account was made up of $750, Dr. Hire's bills; $250, the amount claimed to have been loaned by Von Werthern,—the carriage bill, the grocery bill, and various other bills that you will remember. It will not be necessary for the court to speak to you in detail of any but one of these bills besides Dr. Hire's. I shall speak to you fully about the amount for carriages when I come to that point.

Now, the question has arisen as to the meaning of the word "reimburse." The court instructs you that for the purpose of this trial, if you find that receipts were given to Von Werthern that would conclude the persons who gave them from making any claim upon the government, then the fact that it appears in this case that Von Werthern did not pay these people will not be such a fraud as would compel you to convict them, provided the claims themselves were honest, or thought to be honest, by those whom you find presented them. That is, to make it very simple, here is a claim in which Von Werthern certifies that he has paid these people, when the evidence shows

that he has not paid any of them.   Now, if that was all of the case, you would have to acquit, without going any further.   But you have to consider the case as if Dr. Hire, the undertaker, the grocer, and all these people had presented their claims to the government of the United States; and if you found that Von Werthern, or whoever conspired with him, knew that they were false, then they are guilty,—if they knew they were fraudulent.   But, so far as the people participated in presenting these claims in Von Werthern's name, instead of in the names of the people to whom they were due, would not convict them.

Now, I want to define what is meant by the last sickness.   As the court remarked during the trial, great weight is due to the opinion of the departments with reference to the meaning of words in the statutes; but, when the question is submitted to the court, it is a judicial question, and the court, after examining the subject, is bound to tell you the meaning of the words.   The last sickness means the sickness which results in death.   It may be more or less extended, according to the circumstances of the disease.   If it is an acute disease, where a man was well, until he was confined to his bed, and then died, it would count only from the time in which he was prostrated and confined to his bed.   But if it was such a case as this was, lingering, and, while admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to his aggregate weakness, why, the last sickness would commence from the time this consumption, in a pronounced way, set in.   You must deal with that as you find it.   It may be a year or less.   It was from the time that he took to his bed and never left it.   On the other hand, it should not be extended over a life-time, but you must, as sensible men, look at it, when, in the opinion of doctors, and in the opinion of those who knew, he had the disease operating upon him from which he died.   Consumption of the lungs is a very weakening disease, and a very protracted one.

The first question for you is:   The government admits that Frisbie, as the attorney of Von Werthern, presented these claims.   The first inquiry is, was there fraud in these claims? because you must not only find fraud, but find conspiracy.

I will first direct your attention to the question of fraud.   Were these claims fictitious, or were they so grossly excessive as to be fraudulent?   For a conspiracy to present just claims would not be a crime.   Now, there was one of these claims that were presented which appeared so gross in exaggeration, and yet I heard no evidence offered to sustain it.   That is the claim with reference to the carriages which were claimed to have been used at the funeral. The claim shows 30, and yet there were only four, and these four were all paid for independent of Von Werthern.   So that you must deal with the question of the falsity of the claims with reference to each one of these people.   There might be an effort on the part of

Dr. Hire to present his claim along with the others, who might be innocent; but, if you find that any two of these accused persons presented the claim,—united in presenting the claim which they knew to be false,—then that would constitute a crime.

You come then to the question of conspiracy. Was there a conspiracy between two or more of the defendants? I have defined conspiracy, and you must apply that definition to this case. Each man must have known that the part of the claim you may find he presented was false; he must have conspired with the others to present that along with them.

First, as to Frisbie. The case opens with showing that Frisbie acted for himself in part, and in part as attorney. Now, I instruct you that the government must establish, in order to convict Frisbie of this offense charged, that he acted in some capacity in addition to that of attorney. The evidence discloses that he made an affidavit as a neighbor. If you should find that that affidavit was false, and known by him to be false, and that he, along with some one of the other two of the accused, presented that to the department, that would of itself be an offense. The evidence may show you that he acted in a capacity in another way. There may have been such conduct on his part beyond what an ordinary attorney would do in the preparation of this case that he had an interest in it. All that is for you; but you must find the fact that he did have some added position with reference to this claim beyond that of an attorney. If the evidence satisfies you that he had an interest, the fact that he did send it on as an attorney would not screen him. If you find that he did, by this affidavit, individually, or if you find that he had an interest in it from the general look and aspect of the case, then he would stand before you not screened by the fact that he was an attorney.

Now, as to Von Werthern. I do not see that we need deal with anything, as far as Von Werthern is concerned, except in the one charge for carriages, unless in one aspect. Of course, all the claims are before you. But somebody knew that these carriages were a sham; and if the evidence, not contradicted, before you is true, whoever joined in presenting this claim for 30 carriages, or joined in presenting this claim, must have presented a known falsehood. If you find two of them did it, they are guilty under the law. Now, to be just to Von Werthern, whether you decide his case abruptly against him or not, it all depends upon the conclusion you arrive at whether he signed the second voucher. He has taken the stand. You have got his handwriting before you,—a good many signatures which are admitted or proved to be genuine. You have got his power of attorney to Frisbie, in which he recites that he gives him the power of attorney to present the claim, and to collect it, for the expenses of th last sickness and the expenses for the funeral. You have heard his evidence on the witness stand, and you can simmer it down. The

counsel for the defense has been very able, and, indeed, the counsel for the United States has been very able; still, if you find that on the stand Von Werthern clearly falsified his evidence, it affects his case.

The third defendant is Dr. Hire. He is charged with claiming $750. It is for you to say whether he was the physician of Capt. Springer in his last illness. When the government closed its case, there was an implication of his not being the physician, yet Springer's child testifies to having seen him there. The fact that only one prescription is produced as being made by him is testified to as not being strange, because he is a homeopathist. You must see whether he practiced any fraud in presenting his claim, or that he did present it only in connection with the others because he was required to present it in that way. If you find that his conduct about his own claim was such as to enable you to believe it might have been justly presented by itself, then, of course, you will consider that.

The whole case of these three persons is with you