McLEAN et al. v. BREEN et ux. (No. 8319.)*

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 29, 1916. Rehearing Denied Feb. 19, 1916.)

1. WILLS ☞682 — CONSTRUCTION — TRUST — "LAST ILLNESS."

Under a will devising all property of testatrix in trust to be managed and the net income used exclusively for the maintenance of a sister during her natural life, and on her death and the payment of the expenses incurred in her last illness, to a religious body, the trustee was liable for the reasonable expenses incurred during her "last illness," that term meaning the sickness which is terminated by the death of the patient as found from the circumstances and facts of the case, and such expenses were to be paid out of the estate before vesting the remainder in the residuary legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1602, 1607–1611; Dec. Dig. ☞682.

For other definitions, see Words and Phrases, Second Series, Last Illness.]

2. TRUSTS ☞263—ACTION AGAINST TRUSTEE —QUESTION FOR JURY — LAST ILLNESS OF DEVISEE.

In an action against the trustee under such will to recover for services rendered and expenditures incurred by plaintiff in the care of such devisee, the duration of the devisee's last illness was a question for the jury under all the facts and circumstances.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 373; Dec. Dig. ☞263.]

3. APPEAL AND ERROR ☞1053—HARMLESS ERROR—RECEPTION OF EVIDENCE—CURE BY INSTRUCTIONS.

In such action, the court's action in admitting over objection testimony as to extra services required and expenditures made on behalf of the devisee by plaintiff prior to the time when the devisee took to her bed for the last time, was not reversible error, where the question when her last illness began was left to the jury, with instruction that plaintiff could not recover for expenditures of services rendered prior to such illness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. ☞1053.]

4. TRUSTS ☞263—ACTION AGAINST TRUSTEE —INSTRUCTIONS.

In such action, an instruction that if plaintiff's wife undertook and agreed to care for the devisee during her last illness and until her death at $30 per month, and that if her husband ratified such agreement, the verdict should be for defendant, otherwise for plaintiff, was not erroneous, or at least was favorable to the defendant.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 373; Dec. Dig. ☞263.]

5. APPEAL AND ERROR ☞216—INSTRUCTIONS —NECESSITY OF REQUEST.

If such instruction was unduly restrictive, it was defendant's duty to tender a charge from which the restrictive terms had been eliminated, and, upon his failure to do so, the objection to the instruction would be held waived.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞216; Trial, Cent. Dig. §§ 627–641.]

6. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—PROPOSITION.

In an action against a testamentary trustee to recover for services rendered to a beneficiary entitled to maintenance for life and the expenses of last illness, an assignment of error in that an instruction that if plaintiff's wife agreed to care for the devisee during her last illness at $30 per month and if plaintiff ratified such agreement, the defendant was not liable was on the weight of the evidence, and that the evidence showed that the plaintiff was a party to the contract and that his ratification should not have been submitted, was not sustained by a proposition thereunder that there was nothing in the record justifying the plaintiff's ratification of the agreement, as no contract was set up with reference to the devisee's care other than that plaintiff's wife was to take her from an infirmary and care for her on the same terms on which the infirmary was caring for her, and that plaintiff was acquainted with the terms of testatrix's will, as it might be assumed that they agreed to care for the devisee on the under-

standing that the expenses of her last sickness should be paid out of the estate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

7. APPEAL AND ERROR ☞1064 — HARMLESS ERROR—INSTRUCTIONS.

Error in such instruction, if any, was not prejudicial, where the trustee would have been chargeable for the reasonable and proper expenses of the last sickness of the devisee in any event, and where the court limited the recovery to the expenses of her last sickness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

8. TRUSTS ☞262—ACTION AGAINST TRUSTEE —EVIDENCE—LAST ILLNESS.

In such case, where the question of what constituted the devisee's last illness was one for the jury, evidence relating to alleged special services rendered to the devisee, expenses incurred in her behalf, the condition of her health during her residence with plaintiff and the character of food required by such condition of health, though relating only remotely to the issue, was admissible.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 372; Dec. Dig. ☞262.]

9. TRUSTS 261—SERVICES RENDERED BENEFICIARY—ACTION AGAINST TRUSTEE—AMOUNT OF RECOVERY—PLEADING.

In such case, plaintiff could not recover as to any one item an amount in excess of that claimed to be due.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 371; Dec. Dig. ☞261.]

10. WORK AND LABOR ☞29 — PERSONAL SERVICES—VALUE.

In an action by plaintiff and his wife against the trustee of an estate to recover for services and expenditures in behalf of a devisee seeking to recover in the sum of $2,360 for nurse hire for 15 weeks at $25 a week, for liquors furnished, for fuel, washing, linen, carpeting, and extra nursing and care, where there was evidence that the devisee's last illness was not limited to the 15 weeks, that she required a great deal of care, that her affliction was so offensive that no trained nurse could be induced to attend her, a verdict of $1,000 was not excessive.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 56–58; Dec. Dig. ☞29.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by J. J. Breen and wife against W. P. McLean, Senior, trustee, and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

McLean, Scott & McLean, of Ft. Worth, for appellants. Capps, Cantey, Hanger & Short, of Ft. Worth, for appellees.

BUCK, J. This action was brought by J. J. Breen against W. P. McLean, Sr., trustee of the estate of Rose A. Dodd, deceased, and the Congregation of the Sisters of Charity of the Incarnate Word, on account in the sum of $2,360, alleged to have accrued to him by virtue of services and expenditures rendered and incurred by himself and wife, and for and on behalf of Mrs. Anna Morey. Plaintiff alleged in his petition that said Anna Morey lived at his house for about two years and eight months prior to her death, and that during said residence there he expended money in her behalf, and his wife rendered services to her, to the amount above named, and that under the terms of the will of Mrs. Rose A. Dodd, sister of Mrs. Morey, the trustee of the estate of Mrs. Dodd was liable to him out of the assets of said estate in said sum of money.

Mrs. Dodd and Mrs. Morey were aged sisters, both being widows for many years before their respective deaths, and lived together for many years before the death of Mrs. Dodd. Neither one had children or descendants, or known relatives, so far as the record shows. Mrs. Dodd was possessed of an estate of the estimated value of some $4,000, and producing an income of some $30 to $35 per month. Mrs. Morey received a pension from the United States government of about $12 per month, and had at the time of her death a cash deposit in bank of about $630. In 1908, Mrs. Dodd and her sister, Mrs. Morey, went to St. Joseph's Infirmary, a hospital under the control of the Congregation of the Sisters of Charity of the Incarnate Word, an incorporated charitable body, and made arrangements for her and her sister to board at said Infirmary for a stipulated sum. Some months thereafter, Mrs. Dodd died, leaving a will, by the terms of which W. P. McLean, Sr., was made trustee to carry out the provisions of said instrument. The following are the items of the will, pertinent and material to the questions raised in this suit:

"Item Fourth: I hereby devise and bequeath to my said above-named trustees, one at a time in the order named in the last preceding item of this, my will, all of my property, real and personal, wherever situated, in trust for my sister, Anna Morey, of Fort Worth, Texas, as follows:

"I direct that whichever one of my said trustees shall have charge and management of my property, shall turn over the annual income to be derived therefrom, to my said sister during her natural life. I desire that the income of my said property shall be used exclusively for the support and maintenance of my said sister during her natural life, after deducting therefrom the taxes and other expenses necessarily incident to the management, control and safe keeping of said property.

"Item Fifth: I will and direct upon the death of my said sister and the payment of whatever expenses may be incurred in her last sickness and for her funeral expenses, that all property real and personal of my estate hereby bequeathed to my said trustees for my said sister, then on hand, shall go to the Congregation of the Sisters of Charity of the Incarnate Word, a religious body, and my trustee, then in possession of said property as such trustee, is hereby directed to pay over and deliver to said Congregation of the Sisters of Charity of the Incarnate Word, all of said property so remaining in the hands of my said trustee after payment of the said expenses of last sickness and funeral expenses of my said sister."

After Mrs. Dodd's death, Mrs. Morey continued to live at the St. Joseph's Infirmary until some time in the early part of 1910; W. P. McLean, Sr., as trustee, paying for her $30 per month for room and board. Mrs.

Breen was a friend of Mrs. Morey, and had been of both sisters during the lifetime of Mrs. Dodd, and often visited Mrs. Morey subsequent to Mrs. Dodd's death. In January or February, 1910, Mrs. Morey, with the consent of the trustee and of the management of the Infirmary, went to live with the family of plaintiff, and continued to live there up to the time of her death. The trustee, W. P. McLean, Sr., informed Mrs. Breen that the income from the estate of Mrs. Dodd would not exceed $30 per month, and that, therefore, he could not pay for Mrs. Morey's board and room more than said amount. Plaintiff alleged, however, that said McLean agreed with Mrs. Breen to pay for additional expenses incurred in behalf of Mrs. Morey, and for extra services performed in taking care of her, but that such payment could not be made until Mrs. Morey's death. This was one of the sharp issues made by the pleadings and the evidence; the defendant claiming that Mrs. Breen had consented to take Mrs. Morey to board and room for the sum of $30 per month, and that Judge McLean, as trustee, told Mrs. Breen that he was not authorized to pay or promise more than that amount, and it is denied, both in the pleading and testimony of defendants, that any promise or agreement was made as to compensation further than the $30 per month stipulated. Defendant also denied the account of plaintiff, and pleaded that the same was fictitious and fraudulent in its entirety, and that the $30 per month paid for Mrs. Morey's board and lodging, together with her pension of $12 per month, and the further sums, amounting to $365, paid Mrs. Morey, but alleged to have been used by the plaintiff and his wife in payment of expenses incurred and services rendered by them for Mrs. Morey, were amply sufficient to meet all the expenditures and to pay for all of the services rendered for Mrs. Morey by plaintiff and his wife.

Upon a trial a verdict and judgment were rendered in favor of the plaintiff for the sum of $1,000. The defendants appeal.

Plaintiff's account, rendered to Judge McLean as trustee, prior to the suit, included charges for nurse hire, 15 weeks at $25 per week, or $375; liquors furnished during 2 years and 8 months at 25 cents per day, $242; fuel, 16 months at $12 per month, $192; for washing, 4 years at $5 per month, $240; for mattresses, pillows, and linen spoiled and replaced or used and worn out, $45; carpet alleged to have been furnished and worn out, $40; and extra care in addition to amount contracted and paid for, for 2 years and 8 months, at $500 per year, $1,333.33; the items totaling, $2,467.83. In the suit, plaintiff asked judgment for only $2,360.

There is a mass of testimony, the statement of facts covering some 107 pages, and voluminous pleadings, the transcript covering some 89 pages; and we have examined the statement of facts and pleadings in detail, in order that we might intelligently consider the questions presented in appellants' 10 assignments. We do not think, however, it is necessary to discuss in this opinion each of the assignments presented, but merely to pass upon the vital questions involved.

[1, 2] We think, undoubtedly, under the terms of Mrs. Dodd's will, trustee W. P. McLean, Sr., was liable for the reasonable expenses incurred by Mrs. Morey on her behalf during her last illness. The case was finally narrowed down by amended pleadings so as to present that issue, and the trial court, in his charge, instructed the jury that in no event could plaintiff recover for any expenditures made, or services rendered, for and on behalf of Mrs. Morey, except such as were made or rendered during her last illness, and then only such as they might find and believe from a preponderance of the testimony were reasonably necessary for the ease and comfort of the said Mrs. Morey during her last illness. He further instructed the jury that if they found from a preponderance of the evidence that such expenditures and extra services were reasonably worth more than the $30 per month paid to the plaintiff by the defendant McLean, trustee, then, and in that event only, they should find for the plaintiff in the amount of such excess, unless they found for the defendant under other paragraphs of the charge.

There was considerable testimony on the part of plaintiff as to the sickness of Mrs. Morey during the period of her stay in plaintiff's home, and of expenditures claimed to have been made, and extra services claimed to have been rendered during said time, and appellant has, in several assignments, urged error to the admission of such testimony, inasmuch, as claimed, such expenses were not incurred during the deceased's last illness, and therefore the estate of Mrs. Dodd could not be chargeable therefor. Since the court in his charge limited the plaintiff's right of recovery to the expenditures made and services rendered during the last illness of Mrs. Morey, we think the admission of the testimony of which complaint is made does not constitute error. The deceased was quite an old lady, some 84 years old at the time of her death, and the testimony shows that she was subject to sick spells during practically the entire time of her stay at plaintiff's residence though she was up and down and was able to leave the premises and even go to town up to as late as May before she died in September, 1912. Mrs. Breen testified that she was sick practically all of the time from February, 1912, and required almost constant nursing, both night and day. As to what constitutes the last illness of a deceased, is often times a question of fact which must be decided from all of the evidence pertaining to the condition of

health of deceased covering a long period of time. Mrs. Morey was afflicted with ailments naturally incident to her extreme age. As testified to by both Mrs. Breen and the physician in attendance, she was afflicted with a chronic diarrheal trouble, causing her to have very little control over her bowels, and rendering her very weak. It was this phase of her sickness that caused, as alleged by plaintiff, so much extra laundering, and caused the carpet, mattress, pillows, linen, etc., to be no longer usable after deceased's death.

The court, we think, properly defined what is meant by the term, "last illness," the definition being as follows:

"The term 'last illness,' as used in this charge, means the sickness which is terminated by the death of a patient. The last illness of a patient is an affirmative fact which must be proved as any other fact to the satisfaction of the jury by a preponderance of the evidence, and must be found and determined by the jury from the facts and circumstances in the case. No definite length of time can be described [defined?] by the court as being the last illness of a patient, but the duration of the last illness must be determined in each case by the jury from the circumstances and facts in each [such] case and by a preponderance of the evidence."

The meaning of the term "last illness," as used in this will, is somewhat different from the meaning of the expression when used in the statute governing nuncupative wills. In the latter case, the term is more nearly synonymous with in extremis. But where used in wills, wherein provision is made for the payment of the funeral expenses and expenses incurred during the last illness, or in statutes making claims for such expenses preferred claims, no hard and fast rule or fixed definition may be given, except that the illness must have been that of which the patient died. In the case of Huse v. Brown, 8 Me. (8 Greenl.) 167, the court says:

"The nature of the disorder and its progress are particularly described in the exceptions, and the court instructed the jury that they would decide whether the testator died of the cancer under which he was laboring, when the plaintiff attended upon him, and whether it was a continuing complaint or disorder until his death; and if they should decide those questions in the affirmative, they might consider it his last sickness. And why might they not, whether any such instruction had been given to them or not? It would seem, to a plain understanding, to be an indisputable fact, that the sickness which is terminated by the death of a patient is his last sickness. All taxes and debts due the state are to be paid before other debts, however long a time they may have been due; no limitation is here imposed; nor is there any as to the length of time which the last sickness of a man may have continued prior to his death; and how can the court impose a limitation in the latter case with more reason that in either of the former? Sickness assumes so many forms and death approaches in so many different ways, that we know not how to lay down any legal principle in such cases, that can be applied by way of construction of the words, 'last sickness.' What is to be considered a man's last sickness, seems to be a question properly determinable by the jury upon the facts in each case, which can seldom, if ever, be the same in two instances."

As suggested in the case from which the above quotation is taken:

"The object which the Legislature had in view doubtless was that a sick man, though possessed of but very little property, should be in no danger of suffering by reason of the want of medical advice and assistance, even where unfeeling physicians, if there are any such, would be tempted to refuse or withdraw their professional attentions, apprehending they might lose their reward."

And in this case we think that it is a permissible and natural construction of the provision in the will of Mrs. Dodd that the expenses of the last sickness and the funeral expenses of her sister should be paid out of the estate before vesting the remainder in the residuary legatee, was intended to safeguard the surviving sister against the possibility of any neglect or want during the latter's last days, weeks, or months, when, by reason of her sickness, the proper and reasonable care of the patient might necessitate expenditures in excess of the net income from said estate. As has been before said, neither the testatrix nor her sister had children or other heirs to inherit her property, and it was evidently intended by the testatrix that, to the extent of her estate, if need be, provision should be made for the aged sister left behind. It was thought, doubtless, by her that the net income would be sufficient to pay the current expenses of her sister while in health, but realizing that unusual expenses would naturally be incurred during the last sickness of her sister, she made provision in her will and authorized her chosen trustee to pay, out of the corpus of the estate, such extra expenses foreseen to be necessary.

As stated in United States v. Frisbie (C. C.) 28 Fed. 808:

"The last sickness means the sickness which results in death. It may be more or less extended, according to the circumstances of the disease. If it is an acute disease, where a man was well, until he was confined to his bed, and then died, it would count only from the time in which he was prostrated and confined to his bed. But if it was such a case as this was, lingering, and, while admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to his aggregate weakness, why, the last sickness would commence from the time this consumption, in a pronounced way, set in."

[3] Therefore, we are of the opinion that no reversible error is presented in the several assignments attacking the action of the court in admitting, over objection, various bits of testimony as to extra services required and expenditures made and labor done, for and on behalf of Mrs. Morey, by plaintiff and his wife prior to the time when Mrs. Morey took to her bed for the last time, for under appropriate instructions it was for the jury to determine when the last sickness began. Under the charge of the court, the jury were told that the plaintiff could not recover for any expenditures made or services rendered prior to the last sickness.

[4, 5] In the second assignment appellants

urge error in the giving of paragraph 3 of the court's main charge, which is as follows:

"You are further instructed that if the plaintiff's wife undertook and agreed to take charge of and to care for the said Anna Morey during her last illness, and until the time of her death, at and for the sum of $30 per month, and if you further find that J. J. Breen ratified and confirmed said agreement, if any, and if you have found such to be the case from a preponderance of the evidence, then you will return a verdict for the defendants, and unless you so find you will find for the plaintiff on such issues."

The majority, at least, do not find any error in this charge, and hold that in any event this was a charge favorable to the defendant, and if it was unduly restrictive, which they do not concede, yet it was the defendant's duty to tender a charge from which the restrictive terms had been eliminated and upon his failure so to do the objection would be held to have been waived. Yellow Pine Oil Co. v. Noble, 100 Tex. 358, 99 S. W. 1024; Water Co. v. Robinson, 146 S. W. 1052.

[6] Moreover, defendant's bill of exception No. 2 complaining of this paragraph of the charge urges the objection, that the same is upon the weight of the evidence, "and that the evidence clearly shows that the said J. J. Breen was a party to said contract, and that the court should not submit the ratification or [to] the jury at all."

The proposition under this assignment is as follows:

"There was nothing in the record that justified the court in requiring the ratification by J. J. Breen, husband of Mrs. J. J. Breen, of the arrangement made with Mrs. Breen for the care of Mrs. Morey, as no contract was set up either by plaintiff or defendant with reference to the care of Mrs. Morey other than that Mrs. Breen was to take Mrs. Morey from the St. Joseph's Infirmary to her house and care for her on the same terms as said Infirmary was caring for her. Plaintiff's suit was on an account against the trustee for the care of Mrs. Morey, and the record shows that plaintiff and his wife were acquainted with the terms and provisions of Mrs. Dodd's will."

Therefore the assignment, as restricted by the proposition thereunder, does not present the contention made in the objection urged in the trial court to this paragraph of the charge, to wit: It "is upon the weight of the evidence, and that the evidence clearly shows that the said J. J. Breen was a party to said contract and that the court should not submit the issue of ratification to the jury at all." If, as stated in the proposition, Mrs. Breen agreed "to take Mrs. Morey from St. Joseph's Infirmary to her house and care for her on the same terms as said Infirmary was caring for her," the plaintiff would not thereby be precluded from recovering compensation for extra expenses incurred during Mrs. Morey's last illness. While Mrs. Morey was at the Infirmary she was not confined to her bed, but, presumably, was able to take care of and wait on herself. Therefore the Breens may be held to have made the contract for board and room for Mrs. Morey on the basis of the latter's not requir-

ing any further outlay or trouble than as a boarder; but since as set out in the proposition under this assignment, "the record shows that plaintiff and his wife were acquainted with the terms and provisions of Mrs. Dodd's will," it may be assumed that they contracted for the care of Mrs. Morey with the understanding that the expenses of the last sickness could and would be paid for out of the corpus of the estate.

[7] Since the trustee under the will of Mrs. Dodd would have been chargeable for the reasonable and proper expenses of the last sickness of Mrs. Morey, in any event, whether any contract had been made between the trustee and Mrs. Breen, or Mr. Breen, to that effect, or not, and since the court limited such right of recovery to the expenses of the last sickness of Mrs. Morey, we are of the opinion that the error, if any, is not prejudicial.

[8] Assignments 3, 4, 5, 6, 7, and 10 are directed to the alleged improper admission of certain testimony by Mrs. Breen, which, in general, relates to alleged special services rendered to Mrs. Morey, expenses incurred in her behalf, the condition of her health during the period of her residence in the Breen home, the character of food necessary to be furnished on account of her condition of health, etc. Appellant urges error to the admission of this character of testimony, on the ground that it does not relate to matters incident to the last sickness of Mrs. Morey. While we think that there was considerable testimony introduced by plaintiff that might properly have been omitted, yet, since the question of what constituted her last sickness was one primarily for the jury to decide, we think the character of testimony complained of was admissible as affecting, remotely though it may be, the issue as to when her last sickness began. This is true, particularly in view of the court's charge limiting the recovery, as before stated. Therefore said assignments are overruled.

[9, 10] It is urged in the eighth assignment that the verdict is excessive, and that in no event could plaintiff recover for the item of extra nursing more than was alleged in his petition, to wit, $25 per week for 15 weeks. We think it is undoubtedly true that plaintiff cannot recover as to any one item an amount in excess of that claimed to be due, and the writer, at least, is inclined to think that if the last sickness could not be held, under the pleadings and evidence, to extend over a longer period than 15 weeks, that probably the verdict is somewhat excessive. But, by reference to the pleadings, we find that the allegations of plaintiff's petition do not restrict the period of the last sickness to 15 weeks, but allege:

"That the said Anna Morey was ill and in bad health continuously from the time she came to make her residence with the plaintiff and his wife; that she was the prey of various unnatural appetites and her vital organs were under-

going a process of degeneration and breaking down, which steadily continued and grew worse until her death; that the said Anna Morey was at no time while living with the plaintiff and his wife a well woman, but was all the time diseased and affected with abnormal conditions of her system which ultimately were the cause of her death; that she was not carried off by any sudden attack of sickness or new disorder of her health, but that her death was caused by the same illness which had steadily grown more severe and serious during all the time she maintained her residence with plaintiff and his wife. Plaintiff would further represent that the malady or failing of the vital functions with [which] the said Anna Morey was afflicted grew worse at times than others, so much worse as to require the whole time of one person, both day and night, to attend and nurse her, and that on account of the peculiar[ly] offensive nature of said Anna Morey's affliction, no trained nurse or other person could be procured or induced to attend and nurse the said Anna Morey, and the plaintiff's wife was compelled to and did attend to and nurse the said Anna Morey during said time."

And then follow allegations as to the value of such nursing during 3 weeks in June, 1911, and 7 weeks during the fall of 1911, and 15 weeks immediately prior to her death, in the total amount of $625.

Dr. G. V. Morton, attending physician, testified:

"When I first went to see her in June, 1911, her condition was generally depleted, run down, emaciated, weak, feeble, an old lady and the most prominent thing that I remember about her was that she was badly upset in her digestive tract. That condition was true back when I saw her first in June, 1911. The intestines seemed to be upset more than anything else, she had a badly coated tongue and loose bowels, and on these visits I made practically all the conditions seemingly were similar, except they were growing worse, getting more weak, feeble, and emaciated, as I remember it. The trouble was practically the same during all of my visits from June, 1911, up to June, 1912; these apparent attacks she would have of stomach and bowels, bowels more than, probably, her stomach, on account of the upset diarrheal condition, her stomach being probably responsible in that way for the disturbance in the bowels, probably not performing its functions. During the 3 months from June, 1912, until she died in September, 1912, this was practically a continuation of the same condition and she was growing worse during that period, growing weaker. * * * At the time I called to see her in 1911 and from the first time I ever saw her, I considered her a weak, feeble, and bad sick old lady. At the first time I saw her, her condition was such that death might be expected. She was getting these spells and I never could tell in any one of them whether I was going to pull her through it or not, was my recollection."

Mrs. Breen and her two daughters and various neighbors who visited the Breen home during Mrs. Morey's stay there, testified to facts and conditions which would reasonably sustain the theory, that although Mrs. Morey was able at intervals to be up and even to go to town, as late as May, 1912, yet she was during the period intervening between June, 1911, and her death in September, 1912, suffering from the same and continuous ailment of which she died. Therefore

we are not able to say, taking this view of the matter, that the verdict is excessive. Besides the item of nursing, there were other items alleged and proved, to wit, for medicine, stimulants, fuel, bedding, etc., furnished during and because of Mrs. Morey's last illness, amply sufficient to bring the amount alleged and proved up to and even beyond the amount found by the jury.

Finding no prejudicial error, the judgment of the trial court is in all things affirmed.